FLORA B. LIDDLE, Appellee, v. ROBERT HYDE, Appellant.

No. 41759.

APRIL 4, 1933.

REHEARING DENIED DECEMBER 14, 1933.

Grimm, Elliott, Shuttleworth & Ingersoll, and Putnam, Putnam, Langdon & Fillmore, for appellant.

Donnelly, Lynch, Anderson & Lynch, for appellee.

MITCHELL, J.—On the evening of June 27, 1931, at about the hour of 7 o'clock, and while it was still light, the appellee was driving east on Eighth avenue in the city of Marion, Linn county, Iowa, and the appellant was driving south on Eighteenth street. Both appellant and appellee were driving old Model T Fords. Eighth avenue runs east and west, and is a paved thoroughfare 30 feet in width from curb to curb. Eighteenth street runs north and south, intersecting Eighth avenue, and is 20 feet in width from curb to curb. Ninth avenue is to the north of Eighth avenue, and Seventh avenue is to the south of Eighth avenue. Seventeenth street is west of Eighteenth street, entering Eighth avenue from the south and ending at Eighth avenue. The distance from the east curb line of Seventeenth street to the west curb line of Eighteenth street is 144.6 feet, forming a short block. The distance from the south line of Ninth avenue to the north line of Eighth avenue is approximately 290 feet. On the south side of Eighth avenue, between Seventeenth street and Eighteenth street, there are two houses. The house situated at what would be the southwest corner of the intersection of Eighteenth street and Eighth avenue is known in the record as the Bowen house. The house situated at what would be the southeast corner of the intersection of Seventeenth street and Eighth avenue is known in

the record as the Hibner house. From Seventeenth street to Eighteenth street on Eighth avenue there is no house on the north side that interferes with the view to the north as one proceeds from Seventeenth street to Eighteenth street, and a view can be obtained to the north without any obstruction from Seventeenth street to Eighteenth street as far as Ninth avenue. On the southeast corner of the intersection of Eighteenth street and Eighth avenue is located the Price home. On the northeast corner of the intersection in question is located the residence of Dr. Skinner. The first house on the west side of Eighteenth street north of Eighth avenue is that of De Witt Smith; this house being approximately 180 feet north of the intersection.

The appellee, a married woman 41 years of age, purchased the automobile she was driving at the time of the accident about two months prior thereto. On the day of the accident, she entered Eighth avenue some four or five blocks west of Seventeenth street, at which time she was driving at a little less than twenty miles an hour according to her speedometer. After she passed the intersection at Seventeenth street, she again looked at the speedometer, and her car, according to the speedometer, was traveling at the rate of twenty miles per hour. After looking at the speedometer after passing Seventeenth street, and observing the reading thereof, the appellee looked to the north, and testified that there was no car on Eighteenth street between Eighth and Ninth avenues at that time. She continued at the identical speed of twenty miles per hour from the time she looked at her speedometer after passing Seventeenth street until the happening of the accident in question. After she looked to the north, she looked straight ahead until she came to the Bowen house, near the southwest corner of the intersection of Eighth avenue and Eighteenth street, and when she was first able to see to her right south on Eighteenth street. She looked to the right on down Eighteenth street, to the south, just as soon as it was possible for her to see in that direction. She continued to look to her right until she entered the intersection. She was some place in the first half of the intersection when she again looked to the north. At that time the Hyde car was entering Eighth avenue from the north on Eighteenth street. The car driven by the appellant was proceeding south on Eighteenth street. According to the appellant's testimony, he was proceeding at the rate of fifteen miles per hour. The cars came together with the right front fender and the right front

wheel of appellant's car coming in contact with the left running board and door of appellee's car. Appellant's car, after the accident, came to a stop with the front wheels on a line with the east curb line of Eighteenth street and with the right wheels of his automobile as it was headed east, perhaps a foot or a foot and a half south of the center of Eighth avenue. Both of the right wheels of appellee's car came in contact with the south curb, breaking them off, and the car tipped over, causing the injuries to the appellee. The appellee received a gash on the left wrist about five inches long. It extended from the wrist up into the center of the back of the hand. The flesh was torn so that the ligaments to the thumb and the bone of the wrist could be seen.

The cause was submitted to the jury, and the jury returned a verdict for the appellee in the amount of $2,773.45.

The appellant cites a large number of errors as grounds for a reversal, but relies principally upon the errors which will be taken up in this opinion. The appellant argues with a great deal of force that the court erred in overruling the motion of the appellant to discharge the jury and declare a mistrial on account of the voluntary statement of the appellee while on the witness stand. The appellee, while a witness in her own behalf, was asked whether or not she heard a conversation at her home the morning after the accident, between her husband and the appellant, Mr. Hyde, and the appellee testified that she heard Mr. Hyde ask her husband how she was, and he wanted to know if there was anything that he could do. She was then asked the question, "Who said that?" and she answered: "Mr. Hyde. I know I am to blame. I will do anything I can. Let me know what the company does. If it is no good, I don't want it." The appellant, immediately following said statement, made a motion to strike the answer, and also a motion to discharge the jury and declare a mistrial, for the reason that "it is a clear attempt on the part of the plaintiff (appellee) to convey to the jury the information that the defendant (appellant) is protected by insurance; * * * that such an attempt to inject any such information into this record is improper and is calculated to inflame and prejudice the jury against the defendant (appellant)." The court immediately struck that part of the testimony from the record and overruled the motion to dismiss the jury and declare a mistrial. The court later, in its instructions, admonished the jury

to "disregard such testimony and not discuss or consider it, nor allow it to influence you in arriving at your verdict."

This court, in the case of Stilson v. Ellis, reported in 208 Iowa 1157, on page 1169, 225 N. W. 346, 352, says:

"A new trial is demanded because there were injected into the record, appellants assert, references to the fact that they were carrying liability insurance. We have read the evidence in this regard with great care, and are convinced that whatever may have been said in reference to this subject was not such as to demand a reversal of the judgment below. Witnesses brought this matter before the jury by relating conversations that took place in the Ellis home immediately after the accident. Mrs. Ellis herself made statements regarding this insurance. Assuming that what was said by the Ellises at that time was admissible as an admission against interest (as the record seems to show), it cannot be complained because a part thereof referred to the liability insurance. Admissions against interest are such even though they may embody information concerning insurance carried by the declarant. This conversation aforesaid was innocently related by the witnesses upon the stand, apparently without any thought of injecting prejudicial subjects into the record. The trial court, by special instruction, told the jury the following:

" 'Any evidence introduced concerning insurance is withdrawn from your consideration, and you are directed to disregard such testimony and not to discuss the same nor allow it to influence your verdict.' "

In the case at bar the statement was admissible as an admission of liability and an admission of negligence. An admission of liability is admissible, even though it may contain information concerning insurance, and in the case at bar the witness did not use the word "insurance", but the word "company". The appellant was employed by a grocery store, and certainly the use of the word "company" does not imply an insurance company under the evidence in this case. The statement was made by the witness in good faith. The appellee had a right to prove any fact which tended to indicate or prove an admission of liability by the appellant, even though the making of the proof may incidentally disclose that the appellant is protected by insurance. The matter complained of was immediately stricken by the court. It was never mentioned through-

out the trial or the argument. The incidental reception of such evidence is not error, especially if stricken, and the jury directed to disregard it, as it was in this case. There is no claim made here in the brief submitted by the appellant—and the brief is an exceedingly long one—that the verdict was excessive. Every other error which it was possible to conceive of was argued by the appellant, but the appellant does not argue that the verdict was excessive.

The appellant cites certain alleged errors relating to the introduction of evidence. The main objections were that the questions were leading and calling for conclusions. An examination of the record will show no error. Much is left to the discretion of the trial court in the introduction of evidence, and, unless prejudice appears, there will be no reversal on account of leading questions or on account of conclusions. There was no persistent effort on the part of counsel to lead any witness.

The appellant argues that the court erred in not sustaining the motion of the appellant for a directed verdict on the ground that the appellee was guilty of contributory negligence as a matter of law. The record shows that the appellee had the right of way; that after she passed Seventeenth street she looked first at her speedometer and then to the north. There is no dispute in the record but that she was able to see a distance of 290 feet to the north, which was the distance from Eighth avenue to Ninth avenue, and the appellee testified that at that time, after she had passed Seventeenth street and was within 144 feet of Eighteenth street, she looked to the north, and the Hyde car was not in sight, in other words, was not within 290 feet of Eighth avenue. She was traveling at the rate of approximately twenty miles per hour. It was her duty to look to the south as well as to the north. She could not see to the south until she passed what is known as the Bowen house, which was the house located on the southwest corner of the intersection where the accident happened. When she passed the Bowen house, she testified that she looked to the south, and, as she was some place in the first half of the intersection, she looked again to the north. The Hyde car, according to her testimony, was just entering Eighth avenue from the north at that time. The appellant testified that he was driving approximately fifteen miles per hour; that as he approached the intersection and when he was about in the middle of the block between Eighth and Ninth avenues he looked to the right and observed no car approaching from his right. He then looked

to the left, and his attention was then drawn to certain children who were playing on the east side of Eighteenth street. According to the appellant's testimony, his wheels were about three feet in the intersection when he first saw the car driven by appellee. It appeared to be in the center of Eighth avenue and had not yet entered the intersection. The cars came together with the right front fender and the right front wheel of appellant's car coming in contact with the left running board and door of appellee's car. Appellant's car, after the accident, came to a stop with the front wheels on a line with the east curb line of Eighteenth street and the right wheels of his automobile as it was headed east, perhaps a foot or a foot and a half south of the center of Eighth avenue. Both of the right wheels of appellee's car came in contact with the south curb, breaking them off, and tipping the car over, and causing the injuries complained of by the appellee.

It seems to us that the case at bar comes clearly within the rule announced in Roe v. Kurtz, reported in 203 Iowa 906, 210 N. W. 550, in which this court said:

"It is conceded that the driver of appellant's car had the right of way, under the provisions of section 5035, Code 1924, which is as follows:

" 'Where two vehicles are approaching on any public street or highway so that their paths will intersect and there is danger of collision, the vehicle approaching the other from the right shall have the right of way provided, however, that such vehicles coming from alleys and private drives, where view is obstructed, shall stop immediately before entering a public street or highway.'

"Under this statute it was his duty to look to the right to determine whether another vehicle was approaching the intersection from that direction, to which he was bound to yield the right of way. The question therefore is: Did his failure to look to the left, under the circumstances of this case, as a matter of law, amount to contributory negligence on his part? Recognizing the danger to life and property incident to the operation of motor vehicles at street intersections, the Legislature undertook, by the enactment of the foregoing statute, to minimize, and, so far as possible, to prevent, accidents at such places. The statute does not impose the duty on the driver of a motor vehicle who is approaching a street intersec-

tion on the left side to stop and wait for one having the right of way who has not yet reached the intersection, until the vehicle driven by him has passed; but there can be no question but that it is the duty of the driver on the left, who is approaching an intersection simultaneously with the driver of another vehicle on the right, to yield the right of way. In determining whether he was negligent or not, regard will not be had to fractions of seconds. It must have been manifest to appellee, if he saw appellant's truck, that he could not proceed across the intersection without colliding therewith. In such situation it was clearly his duty to yield the right of way. The driver of appellant's car had the right to presume that the driver of a motor vehicle approaching the intersection from the left would observe the statute and yield the right of way to him. Mitchell did not know of the approach of appellee until the instant immediately preceding the accident. He had no time then to do anything to prevent it."

In the case at bar the appellee looked to the north. She could see a distance of 290 feet. At the time she looked she could not have been over 144 feet from the intersection. It was her duty to look to the south. She proceeded at the same rate of speed until her view to the south was unobstructed, which was but a short distance from the intersection. She then looked to the south and proceeded into the intersection. When she had entered the intersection for the first time she saw the car driven by appellant coming from the north. Appellee was traveling about twenty miles per hour. She would travel the distance from the point where she looked to the north to the point of the collision in not to exceed three or four seconds. She was in duty bound to look to the south before entering into the intersection, and she had the right to assume that Mr. Hyde would operate his car under control and yield the right of way. The undisputed record shows that she could not see to the south until she was almost to the intersection. She did look to the south. Ascertaining that there was no one coming from the south, she proceeded into the intersection and then glanced to the north and saw the Hyde car upon her. According to the appellant's theory, the appellee should have kept her head revolving continuously. Certainly, under such circumstances as set out in this case, it cannot be held that she was negligent as a matter of law, proximately contributing to such collision, and the trial court was correct in its refusal to direct a verdict.

The appellant complains of certain instructions given by the court. After a careful reading of the instructions, and taking them as a whole, we are convinced that these instructions are a correct statement of the law.

■ The appellant complains of certain misconduct on the part of certain of the jurors. It appears from the record that two of the jurors passed by the intersection where the accident occurred during the trial. On the hearing on the motion for a new trial, they gave testimony. The witness Barger testified that his trip to Marion was secondary as pertaining to the case.

"It had no bearing on my independent consideration of the evidence as introduced. In considering the evidence in this case under the court's instructions, I was guided solely by the evidence made up in the record."

The other juror, Rose McCarthy, testified that in arriving at her verdict she based it solely on the testimony which had been introduced upon the trial of this case.

In the case at bar also there was no dispute respecting the location of the buildings, the distances, the width of the avenue and street, and no dispute respecting obstructions to the view looking from Eighth avenue north on to Eighteenth street to Ninth avenue, or from Eighteenth street on to Eighth avenue. Both the appellant and the appellee testified in regard to this. Taking into consideration the fact that there was no dispute in the record pertaining to any facts or information that either of these two jurors might have acquired in respect to that location, certainly there was no prejudice. Each testified that his verdict was based solely on the evidence introduced at the trial. The case at bar is to be distinguished from Skinner v. Cron, 206 Iowa 338, 220 N. W. 341, which is cited by the appellant, for in that case there was a dispute concerning the controlling evidence. The liability turned on certain facts testified to by certain witnesses and the dispute was whether such witnesses could see the point of the collision from where they testified they were. One of the controlling facts in dispute was whether a witness could see the place of the collision from where she was lying in bed upstairs looking out of the window. In the Skinner case two jurors visited the location for the express purpose of determining the disputed controlling facts. In the case at bar there was no dispute in regard to the facts, and, in addition to that, both

jurors testified that their verdict was based solely on the evidence introduced in the trial.

A great many other errors are assigned. Without extending the opinion to undue length, we deem it sufficient to say that we have carefully read the entire record and considered all the assignments of error, and are convinced that the appellant had a fair and impartial trial and that the verdict and judgment of the lower court should be, and it is hereby affirmed.

EVANS, STEVENS, ANDERSON, DONEGAN, KINTZINGER, and UTTERBACK, JJ., concur.

KINDIG, C. J., dissents on the theory that the appellee is guilty of contributory negligence when she did not look to the north immediately before entering the intersection.

ALBERT, J., joins in this dissent.