LESTER JANES, Appellee, v. MARTIN ROACH, SR., et al., Appellants.

No. 45034.

FEBRUARY 13, 1940.

Jno. N. Hartley and Clair E. Hamilton, for appellants.

C. A. Robbins and Blanche G. Risher, for appellee.

OLIVER, J.—Plaintiff alleged that on November 23, 1934, at about 8 p. m., he was on the dirt shoulder of a paved highway and in front of a stalled automobile, which was standing at the edge of and partly upon the pavement, when an automobile owned by defendant Martin Roach, Sr., and by his consent operated by defendant Martin Roach, Jr., negligently struck the rear of said stalled automobile and threw it against plaintiff, injuring him. Defendants' answer was a general denial. The cause was tried to a jury and resulted in a verdict for plaintiff. From the judgment entered thereon defendants have appealed.

The accident happened in the country on Highway 92, a paved road 18 feet wide with dirt shoulders on each side 6 or 7 feet in width. In general this road runs in an east and west direction but at the place of the accident it runs approximately northwest and a few hundred feet to the southeast it curves to the east. From the east the road slopes downward to the point of the accident which is marked by a concrete flume or spillway at the edge of the pavement on the right-hand side of westbound traffic.

Shortly prior to the accident a Chevrolet coach which one Watson was driving northwest on said highway had stalled at said point and was standing with the right rear wheel at the outer edge of said flume, the left rear wheel on the pavement approximately a foot from its edge and both front wheels on the dirt shoulder at the edge of the pavement beyond the flume. Watson testified that the taillight and front parking

lights on this car were lighted and that he was attempting to start it.

Appellee came from the opposite direction driving a Model T Ford truck. As he passed the stalled Chevrolet he testified he turned his truck off the pavement and upon the dirt shoulder on his right-hand or northwest side, stopped a short distance ahead, and walked over to the Chevrolet leaving his Ford truck standing faced southeast on the opposite shoulder with head-lights lighted. Some witnesses testified the left wheels of appellee's truck were upon the paving. Appellee testified the tail-light of Watson's Chevrolet was lighted. Several minutes later as Watson was working on said Chevrolet and appellee was standing on the dirt shoulder in front of said car, appellants' Ford automobile traveled along the highway from the southeast and crashed into the left rear corner of the Chevrolet. The force of the impact drove the Chevrolet up and out of the flume, along the dirt shoulder 10 or 15 feet and into the ditch at the right. Appellants' automobile turned on its side, slid along the pavement and came to rest 40 to 100 feet beyond the flume with its front end turned back to the southeast. Appellee was found lying unconscious upon the right shoulder of the highway, near appellants' car. Mrs. Watson, who had been sitting in the Chevrolet, was thrown out upon the edge of the pavement a few feet northwest of the flume. Mr. Watson was thrown off his car and dragged for a distance but was re-leased as appellants' car turned end for end.

Appellant Roach, Jr., testified he drove the Ford V-8 automobile toward the scene of the accident at about 35 to 40 miles per hour, that his brakes and lights were in good condi-tion and he was watching the pavement ahead of him. He said he could observe objects ahead, "I imagine it would be about 75 feet." He testified he was looking ahead but did not see the Chevrolet before he struck it, and saw no taillight. As he made the right turn several hundred feet away, he saw the lights of appellee's parked truck, thought it was moving toward him on its right-hand side of the pavement, took his foot off the accelerator and pulled over to his right and continued down

the slope on the pavement. He did not apply his brakes. "Well I imagine when I let up on the gas the car would naturally slow down, I would not say exactly how fast I was driving, I would say it would be slower than 35 miles an hour." It was not claimed his attention was diverted by the lights of the truck. His only excuse appears to be that he did not see the Chevrolet.

The only issue of negligence on the part of appellants submitted to the jury had to do with section 5029 of the 1935 Code. In this connection the court instructed the jury:

"Under the law of this state it is provided that no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead, such drivers having the right to assume, however, that all persons using said highway will observe the law."

This statement of the law, sometimes called the assured clear distance rule, was explained in several instructions.

I. Appellants contend the testimony of Roach, Jr., as to the distance within which the car could be stopped (which we are unable to find in the record), its speed, lights and the distance at which he was able to discern objects upon the pavement ahead, must be taken as verity since there was no evidence to the contrary. From this they would draw the conclusion that the evidence of their violation of the assured clear distance statute was insufficient to warrant submission of the case to the jury and that the court erred in so doing. Passing for the moment the conclusion so drawn, it is apparent that appellants' factual premise is incorrect in that it fails to take into consideration the circumstances surrounding the accident. Without detailed discussion of said circumstances it may be said they were sufficient to support a finding contrary to said testimony, at least as to the element of speed and consequent ability to stop within the assured clear distance ahead. Hawkins v. Burton, 225 Iowa 707, 281 N. W. 342.

Moreover, upon appellants' motion for directed verdict, the court must view the evidence in the light most favorable to

appellee. This rule requires the assumption that the Chevrolet with lighted taillight was discernible to the driver of a car approaching it from the rear. Consequently, there was evidence to justify a finding that as appellants' car approached the discernible automobile standing in its path, it was traveling in violation of the assured clear distance statute when and after it reached a point beyond which it could not be stopped before it struck the Chevrolet. Nor would it excuse this violation to say that the driver might have avoided the accident by turning out or that negligence might have been predicated upon other grounds also.

Another reason why the question was for the jury is that a directed verdict would require a holding that the evidence conclusively established the invisibility of the Chevrolet. This court has never held that such evidence establishes, as a matter of law, such invisibility of an automobile upon a highway as will excuse a failure to discern it. In some cases the circumstances have been held sufficient to generate a question of fact for the jury upon said proposition. See Kadlec v. Johnson Const. Co., 217 Iowa 299, 252 N. W. 103.

Consequently, the question of the discernibility of the Chevrolet was for the jury and in this case if it was discernible appellant violated the assured clear distance rule in striking it. It may be noted that this question was properly submitted to the jury under appropriate instructions and that the verdict against appellants necessarily comprehended a finding that the Chevrolet was discernible.

The general rule involving cases of this character is thus expressed in Lukin v. Marvel, 219 Iowa 773, 777, 259 N. W. 782, 784:

"In most of the cases heretofore arising under this statute the damage was sustained by the car striking another car parked upon the highway without lights. It is the general rule that in such cases, where the evidence failed to show any diverting circumstances as a legal excuse for the collision, the driver striking the unlighted car was guilty of contributory negli-

gence, under the 'assured clear distance' statute, in failing to drive at such a speed that he could stop in time to avoid the collision.'' Citing cases.

Appellants argue that the assured clear distance statute is not applicable to the circumstances of this case and rely largely upon the statement in Jordan v. Schantz, 220 Iowa 1251, 264 N. W. 259, that it is a speed statute and has nothing to do with the question when a motorist must stop. We have recently had occasion to consider this statute in Remer v. Takin Bros. Freight Lines, 227 Iowa 903, 909, 289 N. W. 477, 480, wherein Justice Miller, speaking for the court, discusses the rule as applied to a car striking a stationary vehicle on the highway and refers to the Schantz case as follows:

''In that case, the collision was between two vehicles proceeding in opposite directions. Section 5029 recognizes that each operator had a right to assume that the other would yield one half of the traveled portion of the highway. Therefore, each had a right to assume that the highway ahead of him would be clear. There was no occasion to apply section 5029 to the facts shown by the record in that case, and we so held.''

The Takin case also discusses Albrecht v. Waterloo Const. Co., 218 Iowa 1205, 257 N. W. 183, which involved a collision with a parked car, and states with reference to that case:

''Unquestionably the plaintiff in that case could stop his car within the distance that he could see. This court held that he also had to *adjust* his speed not only to the distance within which he could see but also with respect to a parked car situated within that distance on the same side of the road ahead of him.''

Swan v. Dailey-Luce Auto Co., 221 Iowa 842, 850, 265 N. W. 143, 147, refers to the application of the statute in the following language:

''If, therefore, the defendants' driver saw, or in the ex-

ercise of ordinary case could have seen, * * * it was his duty to reduce the speed thereof to such a rate as would enable him to bring it to a stop within the assured clear distance ahead, * * * . The driver of a car is now required to absolutely stop his car within the assured clear distance ahead *unless he is able to show 'a legal excuse'* for not so doing.'' Citing cases.

We conclude the question of the violation of the assured clear distance rule was for the jury and that the instructions relative thereto were not erroneous in any of the particulars assigned.

II. Appellants also complain that the petition failed to charge a violation of the assured clear distance statute. The specification of negligence recited that appellant Roach, Jr., ''rounded the curve and descended the hill to the southeast of the point of collision without reducing the speed of said car to a reasonable and proper rate, and without having said car under such control as would enable him to stop the same within the assured clear distance ahead.'' As concerns this complaint the trial court ruled that, while there was more in the charge than there was in the statute, no one could read the petition and not understand that it charged that the car could not be brought to a stop within the assured clear distance ahead. We think this ruling was correct. The specification of negligence pleaded facts rendering the statute applicable and, therefore, it was sufficient. Danner v. Cooper, 215 Iowa 1354, 246 N. W. 223.

III. The contention that appellee was guilty of contributory negligence as a matter of law is without merit. He was not standing upon the traveled portion of the highway and was not required, as a matter of law, to keep a constant lookout for vehicles approaching upon the pavement or to anticipate that another automobile would be driven against the rear of the Chevrolet. He was only required to exercise ordinary care. Whether or not he did so was a question for the jury. Hanson v. Manning, 213 Iowa 625, 239 N. W. 793; Townsend v. Armstrong, 220 Iowa 396, 260 N. W. 17. The court also

instructed the jury that the parking of appellee's truck on the opposite side of the highway unattended, with motor running and without proper flares, would constitute negligence and submitted to the jury the question of whether or not such negligence contributed to the accident. No reversible error appears in either of said instructions.

IV. Finally it is urged the verdict was excessive. The case was tried four times, the first trial resulting in a disagreement, the second in a verdict for appellee for $3,500, the third in a verdict for $7,000 and this case in a verdict for $6,750. Appellants' motion for new trial was overruled, conditioned upon appellee filing a remittitur reducing the judgment to $5,091.26, which was done. The trial court, in so ruling, gave careful consideration to the amount of the verdict.

Plaintiff was a laborer aged 37 years at the time of the accident. His injuries were serious and painful. He suffered a fractured thigh, a lacerated scalp, a crack in the frontal bone of the skull, an injured testicle and numerous scratches upon the face and body. Due to his muscular development the doctors had difficulty holding the limb in position with weights and in reducing the fracture. It was necessary to operate upon the broken thigh and fasten the ends of the bone together with a metal plate. The leg was in a cast for several months and he continued to suffer pain from it for years. He also suffered from headaches for several years. He was unable to use his leg for some time and for several years was unable to do full-time work. His doctor and hospital bills amounted to $591.26. We do not think the verdict was so excessive as to indicate passion or prejudice on the part of the jury, or that it should be further reduced.

Wherefore, the judgment is affirmed.—Affirmed.

CHIEF JUSTICE and all other JUSTICES concur.