CARL J. FISCHER, Administrator, Appellee, v. EDWARD C. STEINHAUER, Appellant.

No. 46229.

JULY 27, 1943.

Kimball, Peterson, Smith & Peterson, of Council Bluffs, for appellant.

Roy W. Smith· and DeVere Watson, both of Council Bluffs, for appellee.

OLIVER, J.—Vernon C. Fischer's death resulted from a collision between a motorcycle, operated by him, and an automobile, driven by defendant, Edward C. Steinhauer, on U. S. Highway No. 375, in Council Bluffs, September 10, 1940, at about noon. The jury returned a verdict for $1,000 against defendant. From judgment thereon, defendant prosecutes this appeal. In considering the errors assigned, the record will be viewed in the light most favorable to appellee and the statement of facts limited accordingly, except as otherwise noted.

Third Street runs north and south and intersects Ninth Avenue, which runs east and west. These are paved streets, each thirty-eight feet wide, with curbings cut back in a quarter circle at their intersection. Highway 375 follows Third Street north to Ninth Avenue and there turns west and follows Ninth Avenue. Traffic entering this intersection from the north and east is regulated by stop signs, but there are no stop signs regulating traffic from the south or from the west. The main flow of traffic follows Highway 375, and thus turns at this intersection. Appellant knew this.

Richard Fryer was riding with decedent on the motorcycle. They were traveling north on Highway 375 (Third Street). Appellant was driving his automobile east on Highway 375 (Ninth Avenue), intending to cross Highway 375 at the intersection and continue east on Ninth Avenue. Each vehicle was visible to the other as it approached the intersection. When the motorcycle was seventy-five or one hundred feet south of the intersection, traveling at about twenty miles per hour, decedent apparently saw the automobile, which was then about seventy-five or one hundred feet west of the intersection, traveling at about the same speed. Decedent veered slightly toward the curb on his right, and reduced the speed of the motorcycle. About the same time appellant reduced the speed of his automobile, so that as it reached the intersection it was practically stopped. Appellant was looking straight ahead.

Suddenly appellant threw his car into second gear and drove it east across Highway 375 at a rapidly accelerating speed, continuing to look straight ahead. When the automobile entered the intersection, the motorcycle was about three feet

from the east curb and five to ten feet south of the intersection and was traveling about fifteen miles per hour. As the automobile rapidly gained speed, decedent applied the brakes of the motorcycle and veered it to the right in an effort to go with the car and thus avoid a collision. The front part of the automobile was then moving into the lane of travel directly ahead of the motorcycle. The motorcycle had almost completed the turn when its wheels skidded on some loose gravel and it slid into the side of the automobile. At that time the motorcycle was traveling about five miles per hour. The point of the collision was five to eight feet north of the south curb, and about one foot east of the intersection. There was testimony appellant told an investigating police officer and another witness he did not see the motorcycle until after the collision, and told Fryer he did not see it until he heard its brakes; that it was hard to see because of its light color.

Appellant as a witness testified he was keeping a lookout, saw the motorcycle at some distance, and that it entered the intersection at a speed of forty miles per hour. In general, his testimony as to the circumstances of the collision was contrary to that of witnesses for appellee.

Appellant makes three assignments of error.

I. Appellant predicates error upon the refusal of the court to direct a verdict in his favor after the court had stricken all the pleaded grounds of negligence except failure to keep a proper lookout. It is appellant's contention that a plea and proof of failure to keep a proper lookout do not justify submission of a case of this kind to the jury unless accompanied by a plea and proof of one or more other grounds of negligence.

We are unable to agree with this contention. While this specification of negligence usually is accompanied by other pleaded grounds, failure to keep a lookout may, in itself, under the circumstances of a particular case, constitute actionable negligence. We have impliedly held this in numerous decisions which recognize it as a separate ground of negligence. Lang v. Siddall, 218 Iowa 263, 254 N. W. 783, holds that failure to keep a lookout must be submitted, if pleaded, and supported. See, also, Holderman v. Witmer, 166 Iowa 406, 147 N. W. 926; Rebmann v. Heesch, 227 Iowa 566, 288 N. W. 695; Westenburg

v. Johnson, 221 Iowa 134, 264 N. W. 18; Lathrop v. Knight, 230 Iowa 272, 278, 297 N. W. 291, 294.

■ II. The second error assigned is the failure to show any negligence on the part of appellant which was the proximate cause of the collision. There was evidence that appellant cut through the flow of traffic on the arterial highway without looking for approaching vehicles, and that he failed to look to the right, or to observe the motorcycle at any time prior to the collision, although it was continuously visible from the time appellant was one hundred feet west of the intersection.

The two vehicles arrived at the intersection, where Highway 375 turns, at approximately the same time. Appellant asserts that under section 5026.01, Code of 1939 (since repealed), he had the right of way because his automobile started to enter the intersection when the motorcycle to his right was five or ten feet back of the line, and that he had the right to assume decedent would yield the right of way, have his motorcycle under control, and be able to stop within the assured clear distance ahead, or would avoid a collision by turning. He contends the court should have ruled, as a matter of law, that he was not negligent in failing to keep a lookout for other vehicles in the line of his travel.

In considering the sufficiency of the proof of appellant's negligence, it is unnecessary to determine which vehicle had the technical right of way. The duty of the operator of a motor vehicle to exercise ordinary care is ever present. Roe v. Kurtz, 203 Iowa 906, 210 N. W. 550. In Rogers v. Jefferson, 224 Iowa 324, 329, 275 N. W. 874, 878, in which it was contended the driver having the right of way was guilty of contributory negligence as a matter of law in failing to keep a lookout, reduce speed, and have his car under control, the court said:

"It must, of course, be granted that one may not go upon a busy public highway and shut his eyes to danger and bask in the dim rays of hope given forth by this more or less uncertain luminary of assumption. It must be kept in mind that this safety zone, created by assumption only, ceases to protect one when it becomes apparent, or in the exercise of ordinary

care and caution should become apparent, that the law is not going to be obeyed."

That case and Rogers v. Jefferson, 226 Iowa 1047, 285 N. W. 701, hold it was a question for the jury whether, under the circumstances, the driver having the right of way was negligent in failing to keep a lookout, reduce speed, etc. In this case the evidence upon the question of appellant's failure to keep a lookout was in conflict. It was for the jury to determine whether or not he was guilty of negligence in that connection. Likewise, it was for the jury to determine whether such negligence (if any) proximately caused the collision.

■ III. The third error assigned is the overruling of six grounds of appellant's motion for directed verdict, which assert the record shows decedent was operating his motorcycle in such manner as to be guilty of contributory negligence as a matter of law in each of the following particulars: (a) excessive speed (b) failure to have the same under control (c) failure to operate the same without being able to stop it within the assured clear distance ahead (d) failure to turn to the left behind the automobile and avoid the accident (e) failure to signal (with hand and arm) his intention to make a left turn (f) in operating a one-seated motorcycle with a passenger sitting with decedent upon said seat. It should be noted that no ground of the motion was predicated upon decedent's failure to yield the right of way to appellant. Hence, that need not be determined.

Decedent did not actually attempt to make a left turn. As the motorcycle entered the intersection the automobile started across the highway and decedent turned the motorcycle to the right to avoid a collision. Therefore, it cannot be said, as a matter of law, that decedent's failure to signal his intention to make a left turn necessarily contributed to cause the collision. Moreover, the jury could have found such failure did not contribute to cause the collision because appellant did not see decedent or the motorcycle before the collision and would not have observed the signal had it been given. Without detailed discussion of the other grounds of appellant's motion, it may be said that, to the extent each ground may have been ap-

plicable under the record, the same was a question of fact for the determination of the jury.—Affirmed.

MULRONEY, C. J., and HALE, BLISS, MILLER, GARFIELD, WEN-NERSTRUM, and SMITH, JJ., concur.

MANTZ, J., takes no part.