I. E. HUTCHINS, appellant, v. ROBERT C. LaBARRE et ux., appellees and cross-appellants.

No. 47779.

(Reported in 47 N.W.2d 269)

April 4, 1951.

Linnan & Lynch, of Algona, for appellant.

Hutchinson & Hutchinson, of Algona, for appellees and cross-appellants.

BLISS, J.—The collision occurred about 9:30 a.m., June 22, 1948, at a right-angled intersection of Kennedy, an east-west street, and Jones, a north-south street. It was a dark, cloudy, rainy morning with a slight mist. Each street has a concrete pavement 24 feet wide with 6-inch curbs. The corners of the parkings are slightly rounded and the intersection is 24 feet square. A house was being constructed at the southeast corner of the intersection, and there were houses on the other corners. Both streets were typical of the older residential districts in any Iowa city or town, with houses on each side and shaded with large trees in the yards and parking.

On this morning, plaintiff, married and forty-one years of age, who traveled sixteen counties in north-central Iowa selling lubricants, was driving his 1941 two-door sedan from the business section of Algona to his home two blocks east of the collision intersection. He was alone in his car and had driven south on Harlan Street, which is the next street west of Jones, and turned left and east into Kennedy Street at a speed of ten miles an hour and proceeded east on Kennedy in the right lane at a speed of 13 or 14 miles an hour toward the intersection with Jones Street. He was familiar with the vicinity.

At the southwest corner of the intersection the northeast corner of the house was 51.1 feet from the south curb of Kennedy Street. This distance consisted of a 24-foot parking, a 4-foot sidewalk and approximately 23 feet of yard. The house faced east with a covered porch on that front. The main part of the house was 35.8 feet from the west curb of Jones Street, consisting of a 16-foot parking, a 4-foot sidewalk and approximately 16 feet of yard. Just north of the sidewalk in the parking on the south side of Kennedy Street directly north of the northeast corner of the house is a tree of large circumference whose branches obscure the roof and part of the upper story of the house. In the same parking in the angle of the two sidewalks is a similar

large tree. In the parking east of the house is a large bush and a small tree. East and south of the house and in the same yard or in the yard south of it is a large bush. On both sides of Jones Street down to Grove Street, a block south of Kennedy, are a dozen or more trees of various sizes with low-hanging branches in the yards and parking. On a rainy day the limbs with June foliage would probably droop lower. The photograph showing the scene we are describing was taken under a shining sun on September 28, 1949. The street gutters were strewn with autumn leaves. This photograph, except as obstructed by the objects noted, shows a view down to Grove Street including a house at the southeast corner of that intersection. An automobile, except as obscured by the trunk of a tree, is discernible, parked on the east side of Jones Street just north of Grove. The photograph was taken with a camera on a tripod 5.5 feet tall placed in the south lane of Kennedy Street about where the driver of an automobile would be, 40 feet west of the west line of the intersection. An alley intersects Jones Street about halfway between Kennedy and Grove Streets. It is approximately 16 feet wide and its east-west center line is about 168 feet south of the south line of the intersection of Kennedy and Jones Streets.

Plaintiff testified that as he approached Jones Street driving in the right lane at the speed of 13 or 14 miles an hour he looked both ways, to his left and to his right, south on Jones Street—it was straight and level as was Kennedy Street—at a place which he thought was about 40 feet west of the west curb of Jones Street. He said the distance might have been four feet more or four feet less. When he looked there was no car at the alley or north of it and he saw no car. He said there was nothing to obstruct his view to the alley. His car was 16 feet long. Its rear end was approximately ten feet back of where he sat. Assuming that he was 36 feet from the west line of the intersection when he looked to his right diagonally south, the rear of his car was 46 feet from the intersection. The distance across the intersection was 24 feet, so that after his car had traveled east 70 feet the rear of his car would have been at the east line of the intersection. His car was moving at all times. He did not look south again before entering the intersection. He thought that he could safely pass through the intersection traveling at the rate of

speed at which he was going before a car from the south traveling at the statutory rate of 25 miles an hour could reach the intersection from the alley.

The contractor who was building the house on the lot at the southeast corner of the intersection had a temporary tool shed about 20 feet long east and west and not so wide and about 14 feet high on the parking south of Kennedy Street and about 30 feet east of the sidewalk on the east side of Jones Street. About 10 feet east of the sidewalk there was a car parked along the south curb. As plaintiff was proceeding he veered his car to the left to miss the parked car until its left wheels were slightly north of the east-west center line of the intersection. When the rear end of his car was about four feet east of the north-south center line of the intersection he saw defendant's car approaching from the south about 12 feet away and at practically the same instant it crashed into the center of the right side of plaintiff's car. He could not estimate its speed.

There are three large trees on the parking north of Kennedy Street and east of Jones Street. They are in a row parallel with Kennedy Street. Plaintiff's car struck the middle tree and the eastermost tree and came to rest against the latter in an upright position and facing east. This tree was 19 feet north of the north curb of Kennedy Street and was 27.5 feet east of the east curb of Jones Street. It was about six feet in circumference. The parking on the east side of Jones Street is 15 feet wide and a four-foot sidewalk runs north and south, east of the parking. The rear of plaintiff's car was entirely east of this sidewalk. Defendant's car came to rest just behind the plaintiff's car with all wheels over the north curb of Kennedy Street on the parking except the right rear wheel.

The mechanic who repaired plaintiff's car testified:

"The whole right side was caved in, frame was bent and we had to straighten it out, and it had to have a new door and the right cowling was all bent. If I recall, I believe he had to have a new fender on it, and the quarter paneling on the floor was all pushed in. It was hit right in the center. The frame was bent toward the center of the car. The floor boards were pushed up about the center of the car. It was the right door that was broken. It was a two-door car. The right front fender needed

repairing. The windshield was broken. The front wheels were out of line. I installed a new running board. I don't remember what two wheels we straightened."

The charges for repairing the car were $358.49. The car was in good mechanical condition before the collision. Plaintiff was semiconscious and dazed for a time after he was helped out of the car. He was quite badly shaken up. His arm and shoulder were hurt. He received medical attention at Algona for some time and in the hospital at Fort Dodge from July 12 to July 23, and was totally disabled for ninety days.

The front of the defendants' car was badly damaged and the estimated repair bill was $319.59. No one was hurt in defendants' car, except one of the girls had minor injuries.

The defendants were living in another part of Algona at the time of the collision and were preparing to move into a new house at 804 South Jones Street. That morning Mrs. LaBarre, thirty-four years old, and her daughters, Susanne, seven, and Charlene, four, had gone in her husband's car (1949 Ford) to the new home to do some work. The car was in good condition and the brakes were working all right. After about forty-five minutes, she, with the children seated beside her, left the house to go up town to see about some drapes. She testified that it was a dark, rainy, cloudy morning, had rained harder earlier, was misting all morning, was raining slightly when she started up town, and her windshield wiper was working. There were no cars ahead of her. In fact there were no other cars that interfered with either driver. It was not her intention to turn into Grove or Kennedy Street, but she intended to go straight north on Jones Street through the intersection with Kennedy Street. She said she "imagined" she traveled the same speed—15 or 20 miles an hour all the way up to the intersection. She testified:

"As I approached the intersection I looked to the right. As I got right up to the intersection I looked. Q. Now as you approached the intersection, did you look to the right? A. Yes, I did. Q. As you got up to the intersection did you look to the left? A. No. As I got to the intersection Sue screamed 'Mommie', and I looked and saw this car, and we were about in the middle of

the intersection. And then I turned to the right and tried to avoid it. * * * Q. Now, when you got up to this intersection you say one of the youngsters screamed something? A. Yes. Q. Did you then see the car of Mr. Hutchins? A. Yes. Q. How far would you say it was from you? A. Well, I think we were both about in the middle, but I think I was about 5, 6 or 7 feet back. * * * Q. Do you know about how fast Mr. Hutchins was coming into that intersection when you first saw him? A. Well, I don't think he was going over fifteen. Q. About fifteen miles an hour? A. Just my judgment. Q. You didn't see him? A. No. * * * I imagine I had time to get my foot on the brake. I can remember trying to go to the right. I think I got turned a little to the right."

On cross-examination she testified:

"Q. What made Susanne scream? A. I guess she saw the car. Q. You hadn't seen the car? A. As soon as she yelled, then I saw it. Q. But up to the time she screamed you hadn't seen this car? A. No. Q. When she screamed you looked up and saw the Hutchins car directly in front of you? A. Yes. Q. How far back south of the car were you at that time? A. It seemed like I was back about six or seven feet. Q. So that you were then already in the intersection? A. Yes. Q. It is correct then, that you never saw this Hutchins car at any time until the little girl screamed, and that is what attracted your attention? A. Yes. Q. And too late to avoid any collision? A. Yes."

Further in cross-examination she testified:

"I saw it [Hutchins' car] and I tried to go right. I tried to turn to the right and we hit. I remember leaning to the right * * * I do not recall reducing the speed of my car at any time. I think I went to apply my brakes as I swerved to the right, but you are so confused you don't remember. I must have hit the brakes a little bit. When I saw the other car it was only six or seven feet in front of me. I didn't slow down, but I think I instinctively put my foot on the brake. I don't think there was time to do that. Things happen fast. I imagine driving my car at fifteen miles an hour I could stop it in less than three

or four feet. I do not know in what distance I could stop the car going at twenty miles an hour. It would be a very short distance. * * * The Hutchins car went up over the parking and didn't stop until it hit the tree."

Defendants alleged eleven grounds in their motion for a directed verdict. Grounds 1 and 2 were that plaintiff failed to establish by any competent evidence any allegations of negligence in the petition; (3) that plaintiff has shown by his own testimony that he was guilty of contributory negligence as a matter of law; (4) and (10) that if a verdict were given the court would be compelled to set it aside; (5) that plaintiff failed to show that Mrs. LaBarre failed to yield the right of way; (6) that plaintiff failed to show that Mrs. LaBarre failed to keep a proper lookout; (7) that plaintiff failed to show that Mrs. LaBarre was negligent in driving when the windshield was covered by steam or mist impairing her visibility; (8) that plaintiff failed to show that Mrs. LaBarre was negligent in failing to reduce the speed of her car to a reasonable and proper rate, that the car was not under control as it approached the intersection; (9) that the evidence if given its greatest weight fails to show any particulars of negligence set forth in the petition; (11) that the plaintiff was guilty of contributory negligence as a matter of law, in that the only evidence of speed in the record is a speed of 20 miles an hour or less on the part of Mrs. LaBarre, and that the record affirmatively shows that the car of defendants as it approached the intersection was in view of plaintiff when he looked to the right and down Jones Street at a point 40 feet back from the intersection.

The court overruled grounds 1, 2 and 6 of this motion and sustained the other grounds and directed a verdict for defendants.

Plaintiff's motion to withdraw defendants' counterclaim from the consideration of the jury was based upon five grounds, to wit, (1) and (5) that defendants had failed to prove the material allegations of the counterclaim; (2) the evidence of the defendants shows conclusively that Mrs. LaBarre was guilty of contributory negligence as a matter of law; (3) the evidence of defendants shows that Mrs. LaBarre was guilty of contributory negligence as a matter of law in failing to maintain a proper

lookout; that the evidence of defendants conclusively shows that Mrs. LaBarre maintained no lookout whatever, and that she did not see the automobile of plaintiff, which was in the intersection and directly in front of her, until her attention was called to it by the screams of her daughter, at which time defendants' car was already in the intersection and it was too late for Mrs. LaBarre to avoid the collision; (4) the defendants failed to carry the burden of proof to show freedom from contributory negligence.

In sustaining this motion on all grounds alleged the court commented on the fact that the defendant-driver testified that she at no time looked to the west as she approached the intersection and at no time looked toward or saw plaintiff's car until the scream of her minor daughter, momentarily before the collision, attracted her attention to it when it was too late to avoid the collision. The court said:

"Even though the defendant-driver may have been entitled to the right-of-way as the car from the right, still this would not absolve her from the duty of exercising ordinary care in keeping a lookout as she approached the intersection. Her failure and contributory negligence in this respect bars any recovery on defendants' counterclaim * * *."

■■ I. Plaintiff assigns error in the court's holding, as a matter of law, that he had failed to show freedom from contributory negligence. We are in agreement with the plaintiff on this proposition. In view of the fact that there may be a new trial of this action we will limit our comments as much as we properly can on the facts involved. This issue was one of fact for the jury and not of law for the court. Plaintiff was traveling at a rate of speed well within the statutory limit in a residence district. At a speed of 14 miles an hour his car would go 20.535 feet in a second. When he looked to his right at a place 36 feet west of an extension of the west curb of Jones Street the rear of his car would reach the east line of the intersection in 70 feet, and in 3.042 seconds of time. When he looked to the right and south along Jones Street he said there was no automobile coming north at the alley or north of it to the intersection. The distance from the center of the alley to the south line of the intersection is 168

feet. His car was somewhat north of that line. Mrs. LaBarre said her car had proceeded six feet into the intersection when it struck plaintiff's car, so that it traveled 174 feet from the middle of the alley to the place of collision. Plaintiff had a right to assume, unless he knew or had reason to know to the contrary, that any car traveling north to the intersection would comply with the statutory speed limit of not to exceed 25 miles an hour. Shuck v. Keefe, 205 Iowa 365, 368, 218 N.W. 31; Lein v. Morrell & Co., 207 Iowa 1271, 1274, 224 N.W. 576; Orth v. Gregg, 217 Iowa 516, 519, 250 N.W. 113; Rogers v. Jefferson, 224 Iowa 324, 328, 329, 275 N.W. 874; Rogers v. Jefferson, 226 Iowa 1047, 1050, 1051, 285 N.W. 701; Kallansrud v. Libbey, 234 Iowa 700, 702, 703, 13 N.W.2d 684. At that speed limit a car would travel $36\frac{2}{3}$ feet a second, and would go 174 feet in 4.74 seconds—at the lapse of which time a jury could have found the plaintiff's car would have been approximately 27 feet past the east line of the intersection, and that the collision would not have occurred. Under the record as made a jury could fairly find that plaintiff was not negligent in believing he could safely proceed across the intersection. Shuck v. Keefe, supra, 205 Iowa 365, 370; Barnes v. Barnett, 184 Iowa 936, 943, 944, 169 N.W. 365; Roe v. Kurtz, 203 Iowa 906, 908, 210 N.W. 550; Hartman v. Red Ball Transp. Co., 211 Iowa 64, 68, 233 N.W. 23. It was for the jury to say whether plaintiff violated section 321.319 of the 1946 Code of Iowa.

Each side has cited and quoted from numerous cases. The rules of law pertinent to this issue have been many times stated by this court. Whether a plaintiff has shown his freedom from contributory negligence is ordinarily for the jury, and it is only in the exceptional case where his negligence has been so manifest and flagrant, and where the facts are so clear that every reasonable and candid mind must reach the conclusion that he was contributorily negligent, that its determination is one of law for the court. A decision in a particular case is ordinarily not conclusively controlling in fact questions in a case before the court. As said by the late Justice Hale in Pierce v. Dencker, 229 Iowa 479, 484, 294 N.W. 781, 783: "Adjudicated cases are of comparatively little value in determining under varying facts the question of contributory negligence."

Plaintiff has called our attention to Rhinehart v. Shambaugh, 230 Iowa 788, 298 N.W. 876; Lawson v. Fordyce, 234 Iowa 632, 12 N.W.2d 301; Huffman v. King, 222 Iowa 150, 268 N.W. 144; Odegard v. Gregerson, 234 Iowa 325, 12 N.W.2d 559; Falt v. Krug, 239 Iowa 766, 32 N.W.2d 781; Tobin v. Van Orsdol, 241 Iowa 1331, 45 N.W.2d 239; Leinen v. Boettger, 241 Iowa 910, 44 N.W.2d 73.

Defendants and the trial court have based their conclusions strongly upon a plat of the outlines of the two streets and the intersection made by the surveyor on September 27, 1949, showing the northeast corner of the house at the southwest corner of the intersection, and a point in Kennedy Street 40 feet west of the intersection. While in the witness chair, defendants' attorney asked the surveyor to draw a straight line on the plat from the 40-foot point to the corner of the house and beyond until it intersected Jones Street. He testified that the distance was 455 feet. They contend that had plaintiff looked at the 40-foot point, he must have seen defendants' car at some place on Jones Street, and that if he saw only to the alley he must have looked at a point farther west than the 40-foot point.

One fault which a jury might find with this contention is that the view of the eye along the pencil line drawn on the plat is not the same view as meets the eye at the actual location. This line on the plat passed through the center of the trunk of the large tree which hid the corner of the house, and through the front porch, and through bushes and trees beyond. When plaintiff approached the crossing, the jury could have found that he did as any careful motorist might have done, not to search for the most distant view of Jones Street, but to direct his view from the intersection on down Jones Street to the alley, and when he saw no car in that distance he thought he could safely pass. If that was a reasonable assumption the fact that he might have seen an automobile 350 or 455 feet south of the intersection would not have made him conclusively negligent as a matter of law. Plaintiff testified that when he looked his view was unobstructed to the alley. The trial court said that if he could see no farther he must have looked when he was 65 feet back and that he should have looked again. This was just a conjecture of the court. The jury might well have reasoned differently. The picture of the

street, which shows it was taken in the sunlight, presents a not entirely clear view as far as a house on the southeast corner of the next intersection with Grove Street. It was for the jury to say what the view was on that shaded street on a dark, rainy, and somewhat misty morning, such as the morning of the collision.

Mrs. LaBarre said she was traveling 15 or 20 miles an hour. The court accepted this as a verity and found her speed was not excessive. It did not consider the bearing of the physical facts on the question of the car's speed. The damage done to each car and the fact that plaintiff's car was forced many feet over the pavement and did not come to a stop until it struck two large trees were important physical facts, which should have been weighed by a jury in determining the speed of defendants' car. Where that car was at any time as it came north on Jones Street depended on its speed.

This court said in Short v. Powell, 228 Iowa 333, 335, 291 N.W. 406, 407: "It is to be remembered that when speeds and distances are spoken of, we are dealing with estimates and not with certainties." To like effect, in Eby v. Sanford, 223 Iowa 805, 807, 273 N.W. 918, 919, the court said: "This is an intersection collision. The facts are in dispute. We are dealing in fractions of seconds, and courts cannot say as a matter of law which of the two parties was to blame. The question is for the jury to decide upon the evidence submitted."

The questions of who had the right of way under the evidence and whether defendants' car was traveling at an excessive speed were matters of fact for the determination of the jury. Falt v. Krug, supra, 239 Iowa 766; Davidson v. Vast, 233 Iowa 534, 540, 10 N.W.2d 12, 16; Pestotnik v. Balliet, 233 Iowa 1047, 10 N.W.2d 99; Hawkins v. Burton, 225 Iowa 707, 713, 281 N.W. 342, 345. As stated in Hawkins v. Burton, supra: "The jury was not bound to take the testimony of the defendant * * * as an absolute verity. It was warranted in considering not only the verbal testimony but all the facts and circumstances surrounding the accident."

And in Davidson v. Vast, supra, Chief Justice Garfield, speaking for the court, stated:

"We are committed to the rule stated in 10 Blashfield Cyclopedia of Automobile Law and Practice, Perm. Ed., 340, section

6560, that speed may be proven by circumstantial evidence and that such evidence may be sufficient to overcome direct evidence as to speed. Hawkins v. Burton, 225 Iowa 707, 713, 281 N.W. 342. We have also said that in most cases the question of speed must be determined from the circumstances. Rogers v. Jefferson, 226 Iowa 1047, 1051, 285 N.W. 701, and cases cited. See, also, as supporting our conclusion, Janes v. Roach, 228 Iowa 129, 133, 290 N.W. 87; Fraser v. Brannigan, 228 Iowa 572, 293 N.W. 50."

With respect to defendants' contention that plaintiff should have looked still farther down Jones Street if he saw no car at the alley, plaintiff cites our recent case of Tobin v. Van Orsdol, 241 Iowa 1331, 45 N.W.2d 239. Whether, under the circumstances, plaintiff should have looked farther south on Jones Street and was negligent in not so doing or whether he could have seen a greater distance were questions of fact for the jury.

Defendants cite Hewitt v. Ogle, 219 Iowa 46, 256 N.W. 755; Kemmish v. McCoid, 193 Iowa 958, 185 N.W. 628; Parrack v. McGaffey, 217 Iowa 368, 251 N.W. 871; Rosenberg v. Des Moines Ry. Co., 213 Iowa 152, 238 N.W. 703, and like cases. We have read them. Each decision is based upon the facts involved, and is not determinative of plaintiff's appeal.

It is our conclusion that the court erred in holding that plaintiff, as a matter of law, failed to show his freedom from contributory negligence, and also erred in sustaining, as matters of law, grounds numbered 3, 4, 8, 9 and 11 of defendants' motion to direct a verdict in their favor. Under all of the evidence, direct and circumstantial, and the inferences fairly deducible therefrom, the determination of these facts and issues was for the jury, and they should have been so submitted.

II. On defendants' appeal or cross-appeal they assign error in the granting of plaintiff's motion to withdraw the defendants' counterclaim upon the ground thereof that defendant Mrs. La-Barre failed, as a matter of law, to establish her freedom from contributory negligence. Plaintiff did not resist defendants' appeal by printed brief or argument or by oral argument. Mrs. LaBarre testified that she looked to the right as she approached the intersection and saw no one approaching from that side, and there was no one closely approaching from her right. She testified that she did not look to her left and that she did not

see plaintiff's car in the intersection directly ahead and in front of her until Susanne screamed, at which time her car was in the intersection six or seven feet, and the collision followed in an instant. Where she looked after looking to the right does not appear.

Defendants contend that under the facts Mrs. La-Barre was entitled to the right of way as provided by section 321.319, Code of 1946, and had the right to assume that the plaintiff would grant it to her, and that she was not contributorily negligent, as a matter of law, in not looking to her left. There is no express provision in the statutes of Iowa respecting the matter of lookout by motorists on the highways, but it is a well-recognized rule of the common law that one operating a motor vehicle must use ordinary care for the protection of himself and others upon the highway, which means to keep a proper lookout. Lorimer v. Hutchinson Ice Cream Co., 216 Iowa 384, 389, 390, 249 N.W. 220; Rebmann v. Heesch, 227 Iowa 566, 579, 288 N.W. 695. He is not absolved from this duty by Code section 321.319. In construing a substantially identical statute the court in Roe v. Kurtz, 203 Iowa 906, 909, 210 N.W. 550, 551, the lately lamented Justice Stevens, speaking for the court, said of a motorist having such statutory right of way:

"It was, however, his duty to use ordinary care, which must be determined by the facts and circumstances of each case. The statute which gave him the right of way and imposed the duty upon appellee [driver to the left] to observe and yield the same to him did not relieve him of the ever-present duty to exercise ordinary care. [Citing out-of-state decisions.] Substantially the same rule was announced by Carlson v. Meusberger, 200 Iowa 65. * * * There can be no doubt but that the driver of a motor vehicle having the right of way may be guilty of contributory negligence. He can never disregard the duty imposed upon everyone using a dangerous instrumentality to exercise reasonable care for the safety of himself and all others with whom he may come in contact. It is not difficult to conceive of situations in which it would be his duty to even yield the right of way given him by the statute. The purpose of the statute is to prevent, and not to license, negligence, and, so far as possible, to make street intersections zones of safety, and not of danger."

In Rogers v. Jefferson, 224 Iowa 324, 329, 275 N.W. 874, 878, in construing a like statute, Chief Justice Hamilton, also a departed colleague, said:

"It must, of course, be granted that one may not go upon a busy public highway and shut his eyes to danger and bask in the dim rays of hope given forth by this more or less uncertain luminary of assumption. It must be kept in mind that this safety zone, created by assumption only, ceases to protect one when it becomes apparent, or in the exercise of ordinary care and caution should become apparent, that the law is not going to be obeyed. * * * One may not place himself in a position of obvious danger when by the exercise of ordinary care he can avoid it, even though he has the right of way, notwithstanding his right to assume that the other fellow will obey the law. Fortman v. McBride, 220 Iowa 1003, 263 N.W. 345."

Quoting the excerpt above from Rogers v. Jefferson, supra, Justice Oliver, in Fischer v. Steinhauer, 233 Iowa 777, 780, 10 N.W.2d 649, 651, said: "In considering the sufficiency of the proof of appellant's [motorist on the left] negligence, it is unnecessary to determine which vehicle had the technical right of way. The duty of the operator of a motor vehicle to exercise ordinary care is ever present. Roe v. Kurtz, 203 Iowa 906, 210 N.W. 550."

Defendants rely for reversal strongly upon the decision in Roe v. Kurtz, supra. In that case the collision of the two motor vehicles was at a street intersection in the city of Washington on a rainy forenoon in December. Plaintiff-appellant was the owner of a Ford truck driven by Mitchell. The court directed the jury to return a verdict for defendant. This court reversed the judgment. The opinion states (pages 907 to 910 of 203 Iowa):

"From the testimony introduced in his behalf, it appears, and the jury might have so found, that the driver of the Ford truck was proceeding eastward south of and near the center of Main Street, which was paved, and that, as he approached the intersection, he looked south and forward, but did not look to the north for a motor vehicle approaching the intersection from

that direction; that he was traveling at the rate of about 15 miles per hour; that, just after he entered the intersection [with Avenue D], the truck was struck on the left side, immediately in the rear of the front wheel, by a Dodge touring car driven by appellee [defendant] at about 15 miles per hour; that Mitchell did not see appellee's car until an instant before the collision occurred, which was not in time to do anything to avoid the accident; that possibly appellee's car first entered the intersection, but the interval that elapsed before appellant's car reached the intersection could not have exceeded the fraction of a second; that the streets are each 30 feet in width between the curbs; and that there was nothing to obstruct the view of the driver of either vehicle. The claimed contributory negligence of the driver of appellant's car is the only question discussed by counsel.

"It is conceded that the driver of appellant's car had the right of way, under the provisions of Section 5035, Code of 1924, which is as follows: 'Where two vehicles are approaching on any public street or highway so that their paths will intersect and there is danger of collision, the vehicle approaching the other from the right shall have the right of way * * *.' [This section is the same as section 321.319, Code of 1946.]

"Under this statute, it was his [appellant's] duty to look to the right, to determine whether another vehicle was approaching the intersection from that direction, to which he was bound to yield the right of way. The question therefore is: Did his failure to look to the left, under the circumstances of this case, as a matter of law, amount to contributory negligence on his part? Recognizing the danger to life and property incident to the operation of motor vehicles at street intersections, the legislature undertook, by the enactment of the foregoing statute, to minimize, and, so far as possible, to prevent, accidents at such places. The statute does not impose the duty on the driver of a motor vehicle who is approaching a street intersection on the left side to stop and wait for one having the right of way who has not yet reached the intersection, until the vehicle driven by him has passed; but there can be no question but that it is the duty of the driver on the left, who is approaching an intersection

simultaneously with the driver of another vehicle on the right, to yield the right of way. In determining whether he was negligent or not, regard will not be had to fractions of seconds. It must have been manifest to appellee, if he saw appellant's truck, that he could not proceed across the intersection without colliding therewith. In such situation it was clearly his duty to yield the right of way. The driver of appellant's car had the right to presume that the driver of a motor vehicle approaching the intersection from the left would observe the statute and yield the right of way to him. Mitchell did not know of the approach of appellee until the instant immediately preceding the accident. He had no time then to do anything to prevent it. * * * Main Street was unobstructed, and no vehicle was approaching from the south, and Mitchell, therefore, had a clear right of way, and must have crossed the intersection in safety, but for the injuries inflicted by appellee. * * *

"Had the driver of appellant's vehicle, sometime before reaching the intersection, observed appellee's approach, he would have had the right to assume that, if they were in a position, considering distance and speed, from which they were likely to arrive at the intersection practically simultaneously, appellee would observe the statute, and yield him the right of way. Any other holding would practically destroy the effect of the statute. We think, under the circumstances of this case, that it was a question of fact for the jury to say whether Mitchell's failure to look to the north proximately contributed to the accident, and not a matter to be summarily disposed of, as a question of law. The judgment of the court below is reversed."

In Rogers v. Jefferson, supra, 224 Iowa 324, the collision took place at about the center of the intersection of two gravel highways. It was a clear day and the roads were dry, and there were no physical obstructions to in any way obscure the view of either driver for more than 30 rods back from the intersection. The highways were practically level at the intersection. Defendant was traveling east on the east-west road. Plaintiff, with his son driving, was traveling north on the north-south road. The traveled path of the highways was 28 feet wide. There was a "stop" sign north of the intersection and on the west side of the

road, facing traffic from the north. There was a "slow" sign west of the intersection and south of the highway, facing traffic from the west. There were no signs facing traffic from the east or south.

Each car was approaching the intersection at a speed of 30 or 35 miles an hour. Plaintiff and his son saw defendant's car when they were about 30 rods south of the intersection, then they looked to the east, or their right, and neither of them looked again to the left, and while they had knowledge and were conscious of the presence of defendant's car on the highway, they never looked, and did not see it again until just immediately prior to the impact of the two cars. Plaintiff's driver had only time to swerve his car to the right two or three feet. Neither car changed speed and each entered the intersection at 30 or 35 miles an hour.

Defendant's motion to direct a verdict was overruled and there was a verdict and judgment for plaintiff which was affirmed.

This court said (pages 327 and 330 of 224 Iowa) :

"The question is, Would the court be warranted in saying as a matter of law, that the plaintiff was guilty of contributory negligence in failing to keep a proper lookout, in failing to reduce his speed to a reasonable and proper rate as he entered this intersection, or in failing to have his car under control so as to bring it to a stop within the assured clear distance ahead, taking into account the following facts: the moderate rate of speed of the cars; the fact that plaintiff had the right to assume that the defendant would take cognizance of the presence of the 'slow' sign and of the statutory rules of the road, granting the right of way to the plaintiff who was approaching him from the right, when their cars approached the intersection simultaneously ? We are of the opinion that there is room for fair-minded and reasonable men to honestly differ as to whether or not the conduct of the plaintiff and the driver of his car was in accord with that of an ordinarily cautious and prudent person. * * *

"We think this case presents a very strikingly suitable and apt situation calling for the application of the wisely established rule that, ordinarily and generally, the absence or presence of contributory negligence is peculiarly a question for the jury, and

the court was therefore right in submitting this matter to the jury for their consideration and determination." Justice Stiger dissented. All other Justices concurred.

In Rogers v. Jefferson, 226 Iowa 1047, 285 N.W. 701, on the same facts another plaintiff recovered judgment, which was affirmed on appeal with three members of the court dissenting.

In Liddle v. Hyde, 216 Iowa 1311, 247 N.W. 827, plaintiff drove her car east on Eighth Avenue in Cedar Rapids toward Eighteenth Street, a north-south highway, at a speed of 20 miles an hour. After leaving Seventeenth Street she looked north to Ninth Avenue, a distance of 290 feet, and saw no cars in that block. She could not look south on Eighteenth until she had passed a house at the southwest corner of the intersection, at which time she looked and saw no cars coming from that direction. She then proceeded into the intersection, not having looked north after the first look. As she was going east across the intersection she was struck by the defendant's car coming south on Eighteenth Street. Defendant's motion for a directed verdict because of plaintiff's contributory negligence was overruled. Following the opinion in Roe v. Kurtz, supra, 203 Iowa 906, this court affirmed the judgment. Justice Kindig dissented because he thought the plaintiff was contributorily negligent in not taking a look north just before entering the intersection. Justice Albert joined in the dissent.

Defendants also cite Gearhart v. Des Moines Ry. Co., 237 Iowa 213, 21 N.W.2d 569, Kallansrud v. Libbey, 234 Iowa 700, 13 N.W.2d 684, Dougherty v. McFee, 221 Iowa 391, 265 N.W. 176, and Shutes v. Weeks, 220 Iowa 616, 262 N.W. 518.

In the Gearhart case, the attorneys for defendant contended that the opinion in Roe v. Kurtz, supra, was unsound, and should be overruled. In this court, with all members concurring, the judgment was affirmed on defendant's appeal.

While there has been some criticism of the holding in Roe v. Kurtz, supra, it has never been overruled and has been cited and followed with approval. The rule of the opinion is that in the determination of the issue of the contributory negligence of the motorist having the right of way under the statute, weight and consideration should be given to his assumption that the motorist on his left will grant him the right of way.

It is our conclusion that the trial court erred in holding, as a matter of law, that Mrs. LaBarre was contributorily negligent.

In passing upon the rulings on both motions we have considered the testimony in the light most favorable to the party against whom the ruling was made. Since there may be a new trial, we state that anything said herein must not be considered as a finding of fact nor as an expression of opinion on the merits of the case but simply as a holding that the case should be submitted to a jury.

The judgment is—Reversed on both appeals.

All JUSTICES concur except JUSTICE MANTZ, not sitting.