LARRY G. WALKER, appellee, v. IVAN SEDREL and IOWA ROOFING COMPANY, appellants.

No. 52404.

(Reported in 149 N.W.2d 874)

APRIL 4, 1967.

Hansen, Wheatcraft & McClintock, of Des Moines, for appellant.

Leo Oxberger and Joseph A. Billings, both of Des Moines, for appellee.

GARFIELD, C. J.—This is a law action by Larry G. Walker to recover for personal injury and damage to his automobile from collision with a car owned by defendant Iowa Roofing Company, admittedly driven by defendant Ivan Sedrel with its consent. (See section 321.493, Code 1962.) The case was later dismissed as to Sedrel. Trial resulted in judgment on jury verdict for plaintiff from which defendant-owner appeals.

The appeal presents the single ultimate question whether the trial court erred in refusing to instruct the jury the collision occurred in a residential district in the city of Des Moines, and plaintiff would be negligent if he was driving in excess of 25 miles per hour just before the collision. The refusal was placed on the ground there was no evidence to support a finding plaintiff was driving in excess of 25 miles per hour. It appears without dispute the collision occurred in a residential district with a speed limit of "25".

The assigned error was properly preserved in the time and manner provided by rule 196, Rules of Civil Procedure. Defendant's answer denies plaintiff's allegation he was free from contributory negligence and alleges he was contributorially negligent in driving over 25 miles per hour in a residential district and in some other respects.

Our answer to the above question depends on whether there is substantial evidence plaintiff was exceeding the stated speed limit. Naturally, defendant contends there is. Plaintiff argues any such finding would rest on speculation or conjecture or not more than a scintilla of evidence.

I. The collision occurred December 22, 1963, about 9:10 p.m. at the intersection of Seventh and Day Streets. Plaintiff, a Des Moines fireman, was driving south on Seventh, Sedrel west on Day. There was a stop sign facing westbound traffic at the northeast corner of the intersection. Some distance east of it there was another sign, reading "Stop Ahead". There was no stop sign facing southbound traffic on Seventh, but it was a one-way (south) street. There is evidence Sedrel came into the intersection without stopping.

Three cars other than plaintiff's were also proceeding south on Seventh. McLaughlin's car was in a lane west of the one in which plaintiff was driving. Schlueter was following plaintiff's car. Mrs. Edwards, a cousin of plaintiff, and her husband were three quarters of a block to a block behind plaintiff's car at the time of collision. Plaintiff, Schlueter and the Edwardses had driven south on Sixth Avenue from a church to Laurel Street, they all turned west (right) on Laurel one block to Seventh, then south (left) on Seventh. Day Street parallels Laurel 370 feet to the south. McLaughlin also drove south on Sixth, west on Laurel and turned south on Seventh.

Witnesses at the trial were police officer Ness, who investigated the accident, Schlueter, Mrs. Edwards and plaintiff. Defendant produced no witnesses. We understand Sedrel was fatally injured in the collision. The most important direct testimony as to plaintiff's speed was given by Schlueter.

He testified he followed plaintiff's car on Sixth Avenue from the church to Laurel; he estimated the speed of both cars at 25 miles per hour; he observed plaintiff's car on Laurel and "estimated its speed to be slower than 25 because we made two corners"; when plaintiff turned west at Sixth and Laurel the McLaughlin car was about two car lengths ahead of him; in turning south on Seventh from Laurel, McLaughlin was on the outside (right) and made a wider turn; plaintiff took the inner, shorter turn and was approximately abreast of McLaughlin after they made the turn; as they proceeded south on Seventh the Walker car got ahead of the McLaughlin car a car length or less.

Schlueter further said he, plaintiff and McLaughlin were all driving in the neighborhood of 25; "Walker would have been just a little bit faster because he passed McLaughlin; * * * I observed the Walker car as it left the church and up to the point of impact. I did not at anytime observe the Walker car exceed the posted speed limit."

This is from the cross-examination of Schlueter:

"Q. I believe you said when you went south on 7th you were going 25, you estimated McLaughlin was 25 and plaintiff had to be going a little faster because he passed McLaughlin? A. These

are approximations, yes, sir. * * * As they proceeded south on 7th, I observed plaintiff's car passing the McLaughlin car. The whole process took the whole block. * * *

"Q. *But you did observe plaintiff accelerate in order to pass the McLaughlin car?* A. *Yes, sir.*

"Q. *And at that time the McLaughlin car in your opinion was going approximately 25 miles an hour?* A. *Approximately, Yes.* * * * At the time the Sedrel car was entering the intersection I was traveling approximately 25 miles per hour. I had been following plaintiff's car some two to four car lengths. Plaintiff did not widen that gap." (Emphasis added.)

On redirect examination Schlueter said: "I observed plaintiff's car as it left the church and followed it along Sixth and down Seventh prior to the accident. I have no feeling he or I was exceeding the speed limit at anytime."

This is from the re-cross-examination: "During the trip from the church to the point of the accident I didn't see plaintiff increasing his speed *excepting right as he approached Day Street and right prior to the accident when he was passing the McLaughlin car.*" (Emphasis added.)

On further redirect examination Schlueter said as they were pulling away from the area at Seventh and Laurel, plaintiff was starting his passing. He was accelerating his speed in relation to the McLaughlin car at this point. *He was at a greater speed.* It took from this point nearly the length of the block before plaintiff passed him and at the point of impact plaintiff was just past the McLaughlin car.

Mrs. Edwards, who was farthest to the rear, testified she did not remember plaintiff passing the McLaughlin car and "we were all going approximately the same speed, 25 miles per hour, because we stayed approximately the same distance apart. Plaintiff was approximately at the same speed."

Plaintiff's own testimony is that as he was driving down Sixth he was going 25 miles per hour; up Laurel it was considerably slower; that is the reason he passed the McLaughlin car; it had slowed down quite a bit; in turning from Laurel onto Seventh he cut inside McLaughlin, went into the lane left

of center and started to pass him; from the intersection of Seventh and Laurel plaintiff accelerated his speed as he proceeded toward Day; he felt he was going the speed limit, 25 miles per hour; prior to the impact the maximum distance he was ahead of the McLaughlin car was a car length, if that.

On cross-examination plaintiff said he accelerated his speed from the corner of Seventh and Laurel; at the time he was even with a car parked at the east curb, he was slightly ahead of the McLaughlin car. The front (south) end of the parked car was about 30 feet north of the north curbline of Day Street.

II. We have summarized, perhaps in unnecessary detail, the direct testimony as to plaintiff's speed just before the collision. However there is other important testimony, circumstantial in nature, which must be considered on the issue of plaintiff's speed.

Plaintiff testified on direct examination that when he first saw the Sedrel car approaching from the east he, plaintiff, was approximately 50 feet back (north) from the north curb on Day; "the Sedrel car was about 20 feet or a car length behind the stop sign when I first observed it. I observed it up to the time I collided with it. It is my opinion it was traveling at a very high rate of speed. It did not stop at anytime prior to the collision. My first reaction when I saw the Sedrel car was to apply my brakes, which I did."

Plaintiff also said on direct examination he estimated the stop sign was eight to ten feet east of the east curb on Seventh Street. Exhibits offered by plaintiff indicate the sign was little, if any, farther east of the stop sign than the distance plaintiff estimated. Schlueter expressed the opinion the Sedrel car was traveling at a high rate of speed.

Officer Ness who investigated the accident testified on direct examination the point of impact was 34½ feet south of the north curb on Day and 13½ feet west of the east curb on Seventh; the point was marked by a pile of debris and skid marks in the intersection; plaintiff's car left 30 feet of brake or skid marks which led to the pile of debris. On cross-examination the officer said "The Sedrel car left no brake marks.

* * * I concluded plaintiff's car probably skidded some 30 feet before it hit the Sedrel car."

From plaintiff's own testimony on direct examination and testimony of the investigating officer, mostly on direct examination, that we have just referred to, the jury could properly find plaintiff traveled 84½ feet, with his brakes applied for about 30 feet, from the time he first observed the Sedrel car to the point of collision. In that time the Sedrel car traveled only about 43½ feet at a very high rate of speed without application of its brakes.

Of course, plaintiff's own testimony as to distances consists of approximations, although the officer's testimony is based on observations and measurements made by him at the scene. Nevertheless, the jury certainly could properly find plaintiff traveled considerably farther after first seeing the Sedrel car, with his brakes applied for 30 feet, than the Sedrel car traveled in the same period of time, without application of brakes and at a very high rate of speed. Obviously, a driver who does not exceed 25 miles per hour cannot travel considerably farther in the same period of time than one who drives at a very high rate of speed.

III. Many photographs of the scene of the accident and the position and damaged condition of the cars, offered by both parties, are before us. Together with the officer's testimony, they clearly show the front end of plaintiff's 1963 Pontiac two-door hardtop struck the right center of defendant's Buick four-door sedan with great force; the Buick traveled southwesterly 43 feet from the point of impact and came to rest with its left side imbedded in a utility pole at the southwest corner of the intersection; plaintiff's car traveled 47 feet from the point of impact and also came to rest at the southwest corner of the intersection with its left rear against a bridge railing a little south of defendant's car; the Buick went over a five-inch curb before striking the pole; a chunk of concrete was broken out of the bridge rail by plaintiff's car.

The distance plaintiff's car traveled from the point of impact is partly due to the fact it was struck by McLaughlin's car after the collision we have described. However, there is no testi-

mony this was a cause of the distance traveled by defendant's car after the impact.

In other evidence Schlueter said he was three to five car lengths north of the intersection when plaintiff struck the Sedrel car; he had no difficulty in stopping before he reached the intersection; he stopped north of the north curbline of Day Street without having to slam on his brakes. The question naturally arises, if Schlueter had no difficulty in stopping before he reached the intersection, when traveling 25 miles per hour, why was plaintiff unable to stop in an equal or greater distance if he, too, was not traveling more than that speed?

IV. From all the evidence, both direct and circumstantial, we have summarized we must hold there was a jury question as to whether plaintiff was driving in excess of 25 miles per hour, in violation of section 321.285(2), Codes 1962, 1966, just before the collision, and it was error not to submit the issue.

V. The controlling rules of law are elementary. There is, of course, no duty to instruct upon an issue without substantial support in evidence or which rests only on speculation or conjecture. Indeed, it is error to do so. Wagaman v. Ryan, 258 Iowa 1352, 1356, 142 N.W.2d 413, 416; Gaskill v. Gahman, 255 Iowa 891, 895, 124 N.W.2d 533, 535, and citations.

A mere scintilla of evidence is insufficient. Ehrhardt v. Ruan Transport Corp., 245 Iowa 193, 198, 61 N.W.2d 696, 699, and citations; Law v. Hemmingsen, 247 Iowa 855, 860, 76 N.W. 2d 783, 786, and citations.

It is equally clear it is error not to submit to the jury a pleaded issue which has substantial support in the evidence. Harrington v. Fortman, 233 Iowa 92, 100, 8 N.W.2d 713, 717, and citations; Overturf v. Bertrand, 256 Iowa 596, 604, 128 N.W.2d 182, 186, and citations.

We have held many times that speed may be proven by circumstantial evidence, and such evidence may be sufficient to overcome direct evidence as to speed. Davidson v. Vast, 233 Iowa 534, 540, 10 N.W.2d 12, 16, and citations; Hutchins v. LaBarre, 242 Iowa 515, 526, 527, 47 N.W.2d 269, 276; Youngs v. Fort, 252 Iowa 939, 944, 109 N.W.2d 230, 233. See also Brown

v. Guiter, 256 Iowa 671, 678, 128 N.W.2d 896, 901, and citations.

██ In considering the sufficiency of the evidence to justify submission to the jury of the issue plaintiff was driving in excess of 25 miles per hour, the evidence must be viewed in the light most favorable to defendant. Ehrhardt v. Ruan Transport Corp., supra, 245 Iowa 193, 196, 61 N.W.2d 696, 698, and citations; Law v. Hemmingsen, 249 Iowa 820, 829, 89 N.W.2d 386, 393; Kuehn v. Jenkins, 251 Iowa 718, 724, 100 N.W.2d 610, 614. By analogy rule 344(f)(2), R. C. P., is applicable.

██ VI. It is true no witness testified in so many words plaintiff was driving at a speed greater than 25 miles per hour. As stated, plaintiff himself testified on direct examination "I felt I was going the speed limit, 25 miles per hour." In view of all the evidence, the jury was not required to accept this answer as a verity that plaintiff was not exceeding the speed limit. Hawkins v. Burton, 225 Iowa 707, 713, 281 N.W. 342, 345; Hutchins v. LaBarre, supra, 242 Iowa 515, 526, 47 N.W.2d 269, 276; Smith v. Darling & Co., 244 Iowa 133, 141, 56 N.W.2d 47, 52; Soreide v. Vilas & Co., 247 Iowa 1139, 1148, 78 N.W.2d 41, 47.

As Division I indicates, Schlueter testified on direct and cross-examination that McLaughlin's speed from Laurel to Day was approximately 25 miles per hour and plaintiff's speed was a little faster in passing him, plaintiff was increasing his speed as he approached Day and was at a greater speed than the McLaughlin car. Plaintiff himself testified on direct examination he accelerated his speed as he proceeded toward Day. Of course it is apparent a motorist cannot pass another motorist without driving faster than he is.

We need not comment further on the circumstantial evidence to which attention is called in Division III that plaintiff was exceeding the statutory speed limit just before the collision except to add that the fact McLaughlin ran into plaintiff's car and pushed it a considerable distance after it collided with the Sedrel car is evidence plaintiff went into the intersection more than "a car length or less" or "a car length, if that" ahead of McLaughlin, as Schlueter and plaintiff testified.

634

It is not for us to weigh the evidence. To do so is the jury's function. We are satisfied that, viewing the evidence on the issue in the light most favorable to defendant, the jury could properly find plaintiff approached the intersection at a speed in excess of 25 miles per hour and the issue should have been submitted to it.—Reversed and remanded.

All JUSTICES concur except THORNTON, J., not sitting.