**FORD MOTOR COMPANY, Appellant,**

v.

**Harrold DARRYL et ux., and John D. Voyles, Appellees.**

**No. 7800.**

Court of Civil Appeals of Texas.

Amarillo.

July 29, 1968.

Rehearing Denied Sept. 9, 1968.

Gibson, Ochsner, Harlan, Kinney & Morris and Max Sherman, Amarillo, for appellant.

Jack Hazlewood, Culton, Morgan, Britain & White, James C. Sanders, Amarillo, for appellees.

DENTON, Chief Justice.

This suit for damages was instituted by Harrold Darryl and wife, Anita Darryl, against John D. Voyles alleging several counts of negligence and against Ford Motor Company for negligence in equipping Voyles's truck with defective brakes, and breach of implied warranty of fitness. The case was submitted to a jury upon special issues. The trial court entered a judgment upon the verdict in favor of the plaintiffs below against Ford, but denied plaintiffs recovery against Voyles, and denied Ford recovery on its cross action against Voyles

for contribution or indemnity. Ford gave notice of appeal, however, its supersedeas and appeal bonds were only in favor of the Darryls. Darryl's notice of appeal as to Voyles was not perfected.

Darryl and his wife, plaintiffs below, sustained personal injuries while driving their automobile in a northerly direction along Western Avenue where it intersects with Mesa Circle in the City of Amarillo, when struck from the rear by a 1965 Ford truck owned and being driven by John D. Voyles, one of the defendants below. Voyles had purchased the truck new from an authorized Ford dealer in Amarillo approximately three months prior to the accident. The truck, manufactured and sold by Ford Motor Company, had been driven between 600 and 700 miles. As Darryl approached the intersection of Western and Mesa Circle he noticed water standing in the area. He reduced his speed by taking his foot off the accelerator. Just as he reached the intersection his car was struck from the rear by Voyles's truck. It was "drizzling" rain and the roadway was wet at the time of the collision. Voyles testified he was following the Darryl car on Western Avenue after he entered on that street from 45th Street. He stopped at that intersection and his brakes were working satisfactorily. When Voyles was approaching Darryl he noticed Darryl "was either starting to stop or he was hesitating to make a left hand turn". When Voyles was from 140–150 feet behind the Darryl automobile he applied his brakes. The brakes failed and he "just rolled free right into the rear of a car". He testified his brakes had worked perfectly up to that time and no repairs or adjustment had been made on them. It is undisputed the push rod, a part of the truck's braking system, which connects the brake pedal to the master cylinder was bent after the collision. The party stipulated the braking system was inoperative after the collision by reason of the bent push rod.

The jury found in favor of Voyles on all issues concerning his alleged acts of negligence and that the collision was not the result of an unavoidable accident. The jury further found: (6a) that the push rod bent under pressure placed on the brake pedal by Voyles in an effort to stop the vehicle; (6b) that the bending of the push rod was a proximate cause of the collision; (6c) that the push rod bent because it was defective; (6d) that the defective condition of the push rod was a proximate cause of the collision; (6e) that the defective condition of the push rod was the result of negligence on the part of Ford during the manufacture or assembly process and (6f) that such negligence was a proximate cause of the collision and (7) that the bending of the push rod did not occur at the time of the impact of the vehicle in question; (8a) and that Voyles's brakes failed suddenly and unexpectedly when he stepped on the brake pedal immediately before the collision; and (8b) that such failure was the sole proximate cause of the collision. In connection with special issue (6c) the court gave the following instruction:

"You are instructed that in this question the word 'defective' is used in the sense that the push rod was defective if when sold by the defendant, Ford Motor Company, it was not of sufficient strength to withstand, without bending, applications of pressure in the operation of the braking mechanism of the frequency and force to be reasonably foreseeable."

The judgment against Ford can be properly based only on the doctrine of strict liability as established by the jury's findings in special issues 6a through 6d. There is no evidence in this record to support the findings of the pleaded general act of negligence during the manufacture or assembly process on the part of Ford. Texas is now among the several states which has adopted the rule of strict liability in tort as it applies to products which cause physicial harm to persons. McKisson v. Sales Affiliates, Inc. (Tex.Sup.) 416 S.W. 2d 787. The question here is whether there

is any evidence or sufficient evidence to establish Ford's liability under the strict liability doctrine.

Voyles testified he purchased the truck new from Sid Stout Ford, Ford's authorized dealer in Amarillo, some three months prior to the collision in question. It had been driven approximately 600 to 700 miles, and was being used to haul silage for a feed lot. He had driven the truck some 250 or 300 miles on the day of the collision, and had been hauling loads of approximately 20,000 lbs. for two or three days prior to the collision. However, the truck was empty at the time it struck appellee's car. He testified the truck had been driven at high and low speeds, over rough country roads and paved streets in the city. He had made hundreds of stops and the brakes had performed normally on every occasion prior to this collision, and no repair or adjustments to the brakes had been made up to the time in question.

We think the applicable rule in this case is stated in Sec. 402A of Restatement of Torts Second, which reads as follows:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

Comment g. under Sec. 402A of Restatement says:

"g. Defective condition. The rule stated in this Section applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him. The seller is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes make it harmful by the time it is consumed. The burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller is upon the injured plaintiff; and unless evidence can be produced which will support the conclusion that it was then defective, the burden is not sustained."

Jack Roach-Bissonnet, Inc. v. Puskar (Tex.Sup.) 417 S.W.2d 262 was a case in which an automobile owner brought suit against the manufacturer and dealer for injuries sustained in a one car accident allegedly caused by the failure of the power brakes and power steering on grounds of breach of warranty and negligence. The court held: "An essential element of the plaintiff's case under that rule [strict liability] is proof that he was injured because the product was in a defective condition when it left the hands of the particular seller." See also Coca-Cola Bottling Co. of Houston v. Hobart (Tex.Civ.App.) 423 S.W.2d 118 (ref'd n. r. e.); and Proctor & Gamble Manufacturing Co. v. Langley (Tex.Civ.App.) 422 S.W.2d 773 (dism'd).

It is uncontradicted that the brakes on Voyles's truck did not function properly just prior to the collision. When he placed his foot on the foot pedal Voyles testified "the truck hesitated instantly and then freewheeled along and I reached to get the brakes again and I had no brakes." The malfunction did cause the collision, but the question here is what caused the mal-

function. The parties agree and so stipulated the braking system was inoperative *after* the collision by reason of the bent push rod. (Emphasis added). There is no direct evidence the push rod was bent prior to the collision, and unquestionably the impact was quite severe as the rear end of Darryl's car was smashed up under the rear wheels.

 There is no direct evidence in this record of any defect in Voyles's truck braking system at the time it left the hands of the manufacturer, however, Darryl contends such proof was shown by circumstantial evidence. They contend this evidence includes the fact that Voyles's truck was purchased new; that it had been driven only 600 to 700 miles; that the brakes had functioned properly and had not been repaired or adjusted since the truck had been purchased; there had been no evidence that anything had been done to the push rod since it left the factory; and together with the stipulation the brakes were inoperative after the collision by reason of the bent push rod. Appellee's position is these facts and/or absence of facts shown are sufficient to support the finding the push rod was defective at the time it was delivered. We are of the view this evidence and the proper inferences therefrom are highly speculative and conjectural. A malfunction of the braking system undoubtedly did cause the collision, but the cause of the malfunction is not shown and it cannot fairly be inferred from the evidence. The truck's mileage included driving over so-called country roads, across plowed fields with heavy loads as well as paved city streets. On all prior occasions the brakes had performed normally. In the opinion of one of the expert witnesses the push rod was bent by the impact. We find no evidence that Voyles's braking system was in a defective condition at the time it was delivered to Voyles. Having failed to sustain this burden the plaintiffs below cannot recover under the asserted right based upon the theory of breach of implied warranty of fitness.

However, if we be mistaken in the above conclusion, we are convinced that the jury's finding as to the push rod being defective at the time it was sold by Ford is so contrary to the great weight and preponderance of the credible testimony as to be manifestly wrong.

The trial court entered judgment in favor of Voyles, one of the defendants below, as to the plaintiff's alleged cause of action and Ford's cross action. Neither party has perfected its appeal as to Voyles. Therefore, that portion of the judgment will be affirmed. Rule 434, Texas Rules of Civil Procedure.

The judgment of the trial court in favor of Voyles is affirmed. The judgment against Ford is reversed and judgment is rendered that plaintiffs take nothing.

The judgment of the trial court is affirmed in part and reversed and rendered in part.