Texaco, Inc., Illinois Insulation and Construction Company, and Gilco Scaffolding Company, Plaintiffs-Appellees, v. McGrew Lumber Company, Defendant-Appellant and Third-Party Plaintiff-Appellee.
McGrew Lumber Company, Third-Party Plaintiff-Appellee, v. Fred E. Bahr, d/b/a Bahr Lumber Company, Third-Party Defendant-Appellant.

Gen. No. 51,949.

First District, First Division.

December 8, 1969.

Rehearing denied December 30, 1969.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Karl M. Tippet and Donald W. Garlinger, of counsel), Peterson, Lowry, Rall, Barber & Ross, of Chicago (Henry P. C. W. Barber, Herbert C. Loth, Jr., Sheribel Rothenberg and Norbert J. Wegerzyn, of counsel), for appellants.

Wildman, Harrold, Allen & Dixon, of Chicago (Bernard Harrold and Jon R. Waltz, of counsel), for appellees.

MR. PRESIDING JUSTICE ADESKO delivered the opinion of the court.

This case involves two appeals from a jury trial which resulted in a verdict and judgment against McGrew Lumber Company and the trial court's directing a verdict for McGrew on its Third-Party complaint against Fred E. Bahr, d/b/a Bahr Lumber Company. For the sake of brevity, the parties will be referred to as McGrew and Bahr, while the plaintiffs will be designated as a group, unless specific reference is necessary.

This action arose from a suit originally filed by Joseph Kovis against the plaintiffs in this cause for recovery under the Structural Work Act, chapter 48, sections 60–69, Ill Rev Stats (1967), filed in August of 1960. Kovis' suit was for personal injuries he incurred in falling from a scaffold erected by Gilco Scaffolding Company and leased to Illinois Insulation and Construction Company, for work to be performed on an ammonia tank owned by Texaco, Inc. The fall occurred on March 20, 1960, when a plank upon which Kovis was standing broke in two while he was installing aluminum sheets under the direction of his employer, East Chicago Sheet Metal Company.

The pleadings disclose that Gilco filed a third-party complaint against McGrew and the latter asserted a fourth-party claim against Bahr. During the pendency of this cause, Texaco, Illinois Insulation and Gilco, on or about March 21, 1964, entered into a settlement of Kovis' claim in the amount of $45,000, each party contributing one-quarter, one-half and one-quarter of that amount, respectively. Subsequently, all of these parties were granted leave to amend the counterclaim into a joint counterclaim against McGrew. After various amendments to each of the parties' pleadings, the cause proceeded to trial in June of 1966, resulting in the instant judgment of $45,000 against McGrew and a similar judgment for that amount in favor of McGrew and against Bahr. The plaintiffs-appellees proceeded against McGrew for indemnity based upon a theory of strict liability for supplying the allegedly defective plank which caused Kovis' injury and McGrew sought indemnity from Bahr upon an identical theory.

The facts reveal that Gilco, under contract with Illinois Insulation, erected scaffolding at the Texaco jobsite in late 1959 and early 1960. The structure was then rented to Illinois Insulation. On March 20, 1960, some two to two and one-half months later, Mr. Kovis fell from the structure as the result of a plank which broke while he was standing upon it. With regard to the plank, witnesses for Gilco testified that the plank had been ordered from McGrew for this particular job. Several invoices of McGrew Lumber Company were introduced into evidence which revealed that Gilco had ordered rough spruce scaffolding lumber. These same witnesses testified as to the standards for lumber used in the scaffolding industry in 1960, with particular comments concerning the presence of knots in lumber to be used in scaffolding and the process by which the lumber was examined as a structure was erected. Mr. Kovis and several of his fellow employees testified as to the occurrence and also

354

identified several photographs of the plank in question. These photographs reveal a 2″ x 10″ plank of rough spruce lumber which had cracked in the middle of the board. These same witnesses also identified some discoloration at the point of breaking, which they characterized as a knot or knots of various sizes that extended across the board for some fraction of its width.

The President of McGrew, Robert S. Friedman, identified the invoices of lumber ordered by Gilco. He also stated that McGrew ordered all of its rough spruce scaffold lumber from Fred Bahr Lumber Company and that he ordered this particular type of lumber as indicated by an invoice of Bahr's which was admitted into evidence. Friedman also testified that after receipt of the lumber from Bahr, it was unloaded, stored, and reloaded when McGrew received an order. According to him, at this time Bahr was McGrew's only supplier of this type of lumber and that all the lumber sent to Gilco was from shipments of lumber by Bahr. Mr. Friedman also examined the photographs introduced by plaintiffs and testified that knots were present, although it was difficult to state this accurately. Mr. Bahr testified that he was a lumber broker and that his company did not maintain a lumberyard, nor did any lumber ever come into the possession of the company.

The first issue raised by McGrew contests the liability imposed by the judgment rendered for the plaintiffs. The theory of liability advanced at the trial was a claim of indemnity under a strict liability theory for a defective product, as first expressed in Suvada v. White Motor Co., 32 Ill2d 612, 210 NE2d 182 (1965). McGrew contends that the Suvada theory was not intended to allow indemnity against persons in the distributive chain of a defective product; that in this State indemnity is generally recognized among tort-feasors who have some contractual relationship or their acts can be characterized as active-passive negligence, in order to shift the

ultimate burden of liability; that the instant case did not proceed under any contractual theory but rather upon the active-passive theory which necessitated a process of fault weighing among the alleged tort-feasors; and finally that McGrew's duty and the plaintiffs' duty to the injured party were identical, i. e., the duty to inspect the lumber ordered and installed upon the scaffold. Thus, McGrew concludes that no indemnity could be given to the plaintiffs, since the law does not allow indemnity among tort-feasors who have been equally negligent with regard to the injured party. In this regard, appellant McGrew relies upon Chicago & Illinois Midland Ry. v. Evans Const. Co., 32 Ill2d 600, 208 NE2d 573 (1965), in which the Supreme Court denied a railroad company's indemnity claim because no proof was submitted as to the responsible party who committed the culpable act of negligence in placing a railroad tie in such manner as to cause injury, where the same duty was imposed upon both indemnitee and indemnitor. See also Union Stock Yards Co. v. Chicago, B. & Q. Ry. Co., 196 US 217 (1905). The appellant Bahr has joined McGrew in this contention to avoid liability on an indemnity basis.

In response to this contention, the plaintiffs argue that Suvada was an indemnity action. They contend that the rationale and policy considerations of that decision would allow this court to grant indemnity for their claim against those persons in the distributive chain of a defective product. Further, they contend that the policy considerations of Suvada would allow recovery by way of indemnity without any fault-weighing process to determine if one tort-feasor's negligence can be characterized as passive, while another's negligence can be considered active. Thus, plaintiffs-appellees argue that the theory of strict liability is applicable to the suppliers of multipurpose products which are placed in the stream of commerce with the knowledge of the product's intended use.

356

■ ■ We agree with the plaintiffs-appellees' contention and hold that indemnity was properly awarded against the appellant, McGrew Lumber Company. First of all, there is no dispute among the parties as to the applicability of Suvada to the product involved in this case. Secondly, we are of the opinion that the Supreme Court intended that decision to apply to sellers and suppliers of defective products, as well as the manufacturer involved in that decision. Haley v. Merit Chevrolet, Inc., 67 Ill App2d 19, 214 NE2d 347 (1966). See: Restatement (Second), Torts, Sec 402A and comments. The entire opinion and authorities cited within that decision repeatedly make reference to a "sellers" liability for a defective product which causes injury to an innocent user. Finally, we agree with the plaintiffs' contention that Suvada intended to eliminate the fault-weighing process of active-passive negligence in determining any grant of indemnity relief. In this respect, the Court stated, at page 624:

> "Indemnity here is not, however, premised on any theory of active and passive negligence. (To require proof that Bendix [the indemnitor] was actively negligent would be the antithesis of strict liability.)"

■ ■ That last quoted statement directly refutes McGrew's contention as to the indemnity theory necessary for recovery under strict liability. We are of the opinion that the policy considerations announced by Suvada in imposing strict liability justify the relief of indemnity against persons in the distributive chain who have placed a product in the stream of commerce with the knowledge of its intended use. In this respect we agree with the following statement from Suvada, at page 619:

> "Without extended discussion, it seems obvious that public interest in human life and health, the invitations and solicitations to purchase the product

and the justice of imposing the loss on the one creating the risk and reaping the profit are present and as compelling in cases involving motor vehicles and other products, where the defective condition makes them unreasonably dangerous to the user, as they are in food cases."

This statement manifests a strong public policy that insists upon the distribution of the economic burden in the most socially desirable manner, even to the extent of ignoring the indemnitee's fault. Sweeney v. Matthews, 94 Ill App2d 6, 236 NE2d 439 (1968). Hence, we concur in the judgment rendered in favor of the plaintiffs' indemnity claim against McGrew.

The appellant cites the case of Vykruta v. Thomas Hoist Co., Inc., 75 Ill App2d 291, 221 NE2d 99 (1966), in which this court expressed the principle that one who leases machinery and equipment cannot be held liable under the Structural Work Act. In Vykruta, the contractor rented a hoist from the defendant, Thomas Hoist Company, to lift bricks, mortar and other material from the ground floor to the upper parts of the building. The plaintiff rode the hoist and was injured. We believe this case is inapplicable on the facts.

The final contention of McGrew concerns the sufficiency of the evidence with regard to proof of a defect in the plank which caused the plank to break. Concomitant with this evidentiary issue, McGrew also contends that the use of photographs of the allegedly defective plank was improper and the plaintiffs were under a duty to produce the defective plank into evidence. We are not persuaded by either of the appellant's contentions concerning the evidence in this case.

First of all, several of plaintiffs' witnesses testified from experience in the field of scaffolding construction with regard to acceptable standards for lumber used in that field. Special attention was given to the presence of knots in a plank which could cause a defect in such

358

lumber. Then the plaintiff produced several witnesses who testified of the breaking of the plank and identified photographs upon which they noted a portion of the plank where knots in the lumber were identified. On the strength of this evidence, we feel that substantial evidence was introduced which would allow the jury to conclude upon the proof of causation.

■ ■ Secondly, with regard to the contention concerning the photographs used in evidence, the appellant McGrew makes reference to Shramek v. General Motors Corp., 69 Ill App2d 72, 216 NE2d 244 (1966). That case affirmed a dismissal of a complaint because the plaintiff failed to produce a tire which was allegedly defective in causing a blowout that resulted in plaintiff's injury. The court reasoned that the plaintiff would not be able to prove causation since a blowout could be the result of many causes and without the actual tire, the plaintiff could not demonstrate the defendant-manufacturer's negligence. We are of the opinion that the Shramek case is not applicable. We believe that the evidence elicited by the photographs of this plank showed that the knots identified by several witnesses were sufficient to indicate a cause for the break in this plank. It was not incumbent upon the plaintiffs to disprove other possible causes. Furthermore, there was sufficient evidence based on the expertise of several witnesses to substantiate the cause of the break which occurred with this particular plank. We are further convinced of this conclusion by the record which is devoid of any objection made to the introduction of these photographs and their use at the trial.

With reference to the appeal prosecuted by Bahr from a judgement in favor of McGrew on its third-party complaint, Bahr questions the trial court's action in directing a verdict. The contention is that there were questions of fact concerning whether Bahr in fact had supplied the defective lumber to McGrew and as to whether Bahr had knowledge of the intended use of the lumber when

ordered by McGrew. Thus, Bahr contends that McGrew failed to sustain its burden of proof so the trial court improperly directed a verdict for McGrew and that the trial court should have granted Bahr's motion for a judgment notwithstanding the verdict. Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504 (1967).

■ The evidence introduced by McGrew in support of its third-party complaint against Bahr consisted of the testimony of its President, Milton S. Friedman. This witness identified his company's invoices to Gilco which consisted of several orders of rough spruce scaffold lumber. Furthermore, Mr. Friedman identified an invoice from Bahr dated September 25, 1959, which evidenced an order of McGrew's from Bahr for a shipment of rough spruce scaffold lumber. On two separate occasions, Friedman stated that at that time, the Bahr Lumber Company was McGrew's only supplier of that type of lumber. On the strength of this evidence we feel that the trial judge properly entered a directed verdict for McGrew depending on the jury's verdict as to McGrew's liability to the plaintiffs in their case. We are of the opinion that the record substantiates the fact that under the Pedrick test, the trial judge properly concluded that "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." 37 Ill2d 494, 510, 229 NE2d 504 (1967).

Therefore, we affirm the judgment of the trial court for the plaintiffs' claim against McGrew and also affirm the directed verdict for McGrew in its third-party complaint against Bahr.

Affirmed.

MURPHY and BURMAN, JJ., concur.