**HAWKEYE SECURITY INSURANCE COMPANY, Appellee,**

v.

**FORD MOTOR COMPANY, Appellant,**

v.

**KELSEY–HAYES COMPANY, Appellee.**

No. 54695.

Supreme Court of Iowa.

June 29, 1972.

Rehearing Denied Sept. 25, 1972.

Jones, Cambridge, Carl & Feilmeyer, Atlantic, for appellant.

Patterson, Lorentzen, Duffield, Timmons & Irish, Des Moines, for appellee Hawkeye Security Ins. Co.

Ahlers, Cooney, Dorweiler, Allbee & Haynie, Des Moines, for appellee Kelsey-Hayes Co.

REES, Justice.

This is an action which sounds in strict liability by which the plaintiff, Hawkeye Security Insurance Company, seeks indemnity from Ford Motor Company as the assembler of a truck for loss the plaintiff (hereinafter Hawkeye) was required to pay to an insured third party by reason of a judgment against plaintiff's insured. Defendant, Ford Motor Company, as the assembler of the truck (hereinafter Ford), by cross-petition sued Kelsey-Hayes Company (hereinafter Kelsey-Hayes) for indemnity on four theories in the event Ford was found liable, viz:

(1) Breach of implied warranty.

(2) Breach of express warranty.

(3) Strict liability.

(4) Negligence.

Hawkeye's petition and Ford's theory of strict liability were submitted to a jury which returned a verdict for plaintiff Hawkeye in the amount of $17,749.93, and for Kelsey-Hayes and against Ford on the cross-petition.

The questions presented on appeal are directed at the failure of the court to sustain a motion to direct verdict in favor of Ford, and upon the failure of the court to instruct the jury on all of Ford's theories in its action over against Kelsey-Hayes.

On May 23, 1964 a 1962 model Ford truck operated by Thomas Kolby and owned by Tri-B Corporation ran into and against the rear of a farm-tractor and trailer owned and operated by one LaVern W. Koppold, causing injuries and property damage. Following the accident, Koppold obtained a judgment against Kolby and Tri-B Corporation in the amount of $20,902.30, which was fully satisfied by

plaintiff Hawkeye, the insurance carrier of Tri-B Corporation by the payment of $17,500.00 plus costs of $249.33. In the main case, Hawkeye had sought indemnity by, or contribution from, Ford the manufacturer of the truck, and Ford in turn sought indemnity from Kelsey-Hayes, the supplier of the brakes for the truck. A motion for separate trial was filed and sustained.

Hawkeye's original action against Ford was pleaded in four divisions, viz:

(1) Breach of implied warranty of fitness.

(2) Strict liability in tort.

(3) Active negligence of Ford versus passive negligence of Tri-B Corporation and its employee, Kolby.

(4) Contribution from Ford on the theory Ford's negligence concurred with the negligence of Tri-B Corporation in causing the damages for which Tri-B (and Hawkeye as its insurer) was eventually held liable.

By ruling on a motion to dismiss the trial court removed from the case the theories of strict liability and the pleaded theory of active versus passive negligence. At the close of plaintiff's evidence, the court further sustained a motion to direct on the theories of implied warranty and contribution, in effect holding:

(1) That plaintiff was not within the class to which the implied warranty applied.

(2) There was no substantial evidence of breach of implied warranty of fitness or of proximate cause.

(3) There was no substantial evidence of negligence on the part of Ford Motor Company.

On the first appeal involving this case to this court, reported at 174 N.W.2d 672, this court held:

(1) The theory of implied warranty of fitness, and the issue of proximate

cause created a jury question and should have been submitted.

(2) There was sufficient evidence to justify submission to the jury on the question of contribution.

(3) The issue of strict liability raised a jury question and should not have been dismissed.

(4) The active versus passive negligence theory was properly dismissed.

Upon retrial of the case in the district court, the petition was amended so as to seek indemnity solely upon the theory of strict liability in tort. Trial to a jury was had and a verdict in the amount of $17,749.33 was returned in favor of Hawkeye, which amount fully indemnified Hawkeye. On Ford's cross-petition against the supplier of the brakes, Kelsey-Hayes, the jury found for Kelsey-Hayes and against Ford. Ford now appeals from both verdicts.

In its appeal, Ford asserts error in two divisions:

In Division I it asserts this is not a proper case for indemnity, alleging (a) Hawkeye could only seek indemnity by establishing the distinction of primary and secondary liability of the parties; (b) Hawkeye's liability arose due to the active negligence of its insured, and therefore is not entitled to indemnity since its insured was primarily, and not secondarily, liable; (c) there was no difference in the legal obligation owed to the injured party by the insured and its insurer, which distinction Ford contends is a prerequisite to indemnity; and (d) the jury in the trial of the case of Koppold v. Kolby and Tri-B Corporation found the active negligence of Kolby, Tri-B's driver, to be a proximate cause of the accident and resulting injuries and damages, and the litigation of that same issue by the trial court in the instant case is barred by the application of the doctrines of *res judicata* and collateral estoppel.

In Division II of Ford's brief and argument. it is asserted the trial court erred in not submitting to the jury all the theories pleaded in Ford's cross-petition against Kelsey-Hayes, namely, breach of express and implied warranties, negligence and strict liability. The trial court submitted only the strict liability theory.

The factual background of the matter now before us is fully set out in the first appeal of this case, reported at 174 N.W.2d 672. For the purposes of this appeal, it is sufficient to say this action sounds solely in strict liability in tort based upon the allegation of Hawkeye that the absence of a "hold-down nut" in the assembly of the brakes on the Ford truck caused the brakes to wear unevenly and resulted in the total failure of the brakes immediately prior to the collision with the rear of the coupled farm tractor and trailer. Such brake failure is alleged to be a proximate cause of the accident, and it is alleged the brakes were in a defective condition when they left the Ford Motor Company assembly plant.

I. We shall first dispose of the contention of Hawkeye that the notice of appeal filed by Ford in this case is defective and that this court does not have jurisdiction of the case. Hawkeye contends the notice of appeal requirements, Rule 336, Iowa Rules of Civil Procedure, were not met.

The notice of appeal in this matter is as follows:

"NOTICE OF APPEAL TO SU-
PREME COURT OF IOWA

TO: HAWKEYE SECURITY INSURANCE COMPANY and PATTERSON, LORENTZEN, DUFFIELD, TIMMONS and IRISH, Attorneys for Plaintiff

and to:

KELSEY–HAYES COMPANY and AHLERS, COONEY, DORWEILER, ALLBEE & HAYNIE, Attorneys for Defendant to Cross-Petition

YOU, AND EACH OF YOU, ARE HEREBY NOTIFIED that the Defendant and Cross-Petitioner herein has appealed to the Supreme Court of the State of Iowa from each and every ruling adverse to the Defendant, and Cross-Petitioner during the progress of and hearing of the said case, and that said appeal will come on for hearing at the May, 1971, term of the Supreme Court of Iowa, or as soon thereafter as the same can be heard in its regular order in said Court.

Dated at Atlantic, Iowa, this 26th day of October, 1970."

The pertinent provision of rule 336, R. C.P., is as follows:

"336. *How taken*

"(a) Appeal * * * is taken and perfected by filing a notice with the clerk of the court where the order, judgment or decree was entered, signed by the appellant or his attorney. It shall specify the parties taking the appeal, and the decree, judgment, order or part thereof appealed from."

In Rosmann v. Lawler, 257 Iowa 1292, 136 N.W.2d 513, this court dismissed an appeal where the notice of appeal contained the following verbiage, "Plaintiff has appealed and does hereby appeal from the adverse ruling of the trial court and from all adverse rulings of the trial court in connection with such matter."

In *Rosmann*, an action had been dismissed for failure to try the case within the time fixed by rule 215.1, R.C.P. Truly, in *Rosmann* the only ruling from which appeal was taken was the overruling of a motion for summary judgment, which of course can only be brought as an interlocutory appeal under rule 332, R.C.P. Plaintiff, in *Rosmann*, then sought to appeal the dismissal by filing the notice containing the language above set out. In the *Rosmann* opinion this court, quoting from State v. Fees, 250 Iowa 163, 164, 93 N.W.

2d 103, 104, said, "The Fees opinion holds: 'The notice here does not describe or identify the final judgment. The rule is that a notice of appeal must sufficiently describe or specify the judgment or order appealed from.'"

The *Rosmann* opinion then goes on to say [247 Iowa at 1294–1295, 136 N.W.2d at 515], "The rule that prevails in Iowa seems to be the one generally recognized. 'As a general rule, the notice or citation should * * * describe the judgment, order, or decree appealed from so as to identify it sufficiently.' (citations) '* * * [T]he notice of appeal must always sufficiently describe or specify the judgment or order appealed from, so as to leave no doubt as to its identity.'"

We must now determine whether the notice of appeal by Ford is sufficient to satisfy the requirements of rule 336, R.C.P. So far this case has involved two trials, one previous appeal, and is now in its second appeal. In the prior trials and in the prior appeal, the parties are all identical and the theory of the case has remained basically the same. It is apparent to us there can be no possible mistake or misapprehension by any of the parties to the action as to the judgment from which the appeal is taken. Final judgment in the second of the prior trials below was entered on October 23, 1970 and on October 30, 1970 the notice of appeal was filed appealing "each and every ruling adverse to the defendant."

■ *Rosmann* was followed in Schrader v. Sioux City (Iowa 1969), 167 N.W.2d 669, 672. We now hold that rigid adherence to the rule enunciated in *Rosmann* and *Schrader* would serve no useful purpose. *Substantial compliance* with the provisions of rule 336 is sufficient; *cf.* Vermeer v. Sneller (Iowa 1971), 190 N.W.2d 389, 392. In considering the sufficiency of the content of the notice we now hold that if the intent of the appellant to appeal from a judgment may be inferred from the text of the notice and if the appellee has

not been misled by the defect the appeal will be entertained. *Cf.* Railway Express Agency, Inc. v. Epperson (8 Cir. 1957), 240 F.2d 189; Jones v. Chaney & James Const. Co. (C.A.Tex.1968), 399 F.2d 84. This more liberal rule of construction is consistent with our oft repeated preference for disposition of cases on the merits and not on mere technicalities. Phoenix v. Stevens, 256 Iowa 432, 433–434, 127 N.W. 2d 640, 641 (judgment entry and notice of appeal not in record); Associates Discount Corp. v. Held, 255 Iowa 680, 684, 123 N. W.2d 869, 871.

■ There is no assertion of prejudice to any party in the instant action resulting from the claimed lack of exacting compliance with rule 336, R.C.P.; nor is there any showing of confusion in the record before us as to which judgment is being appealed from. Absent any such showing by a party complaining of a lack of rigid compliance with rule 336, R.C.P., and taking into account the extent of the litigation involved in the matter before us, we hold the notice of appeal was sufficient and substantially complied with the rule.

II. We now turn to the contention of Ford that the prior adjudication of negligence against Hawkeye's insured is *res judicata* in this action, or as might be more properly delineated here, the theory of issue preclusion.

In the trial of the action of Koppold v. Kolby and Tri-B Corporation, identified as number 13863 in the District Court of Shelby County, special interrogatories were submitted to the jury as follows:

(1) Did the brakes of the truck fail immediately prior to the event out of which the accident arose?

(2) Was such brake failure due to the negligence of the defendants (Kolby and Tri-B Corporation)?

To both of such interrogatories, the jury responded in the affirmative.

Upon the basis of the answers to the interrogatories, Ford asserts the interrogato-

ries so answered and the verdict in the original case is now *res judicata* in the matter before us.

In Goolsby v. Derby (Iowa 1971), 189 N.W.2d 909, 913, we approved the defensive use of collateral estoppel by a stranger to a judgment. We must now determine what effect, if any, the prior determination of negligence has upon this action and upon Hawkeye, who admittedly stands in the shoes of Kolby and Tri-B Corporation as their insurer and subrogee.

■ Issue preclusion has been interpreted to mean that further litigation of a specific action is barred. Vestal, Preclusion/Res Judicata Variables: Parties, 50 Iowa L.Rev. 27, 28. See also Anno. 31 A.L.R.3d 1044, 1047; 46 Am.Jur. 2d, Judgments, §§ 404, 415.

Vestal has defined participating non-parties as those persons not parties to a suit, but who, nevertheless, control the course of the litigation. 50 Iowa L.Rev., *supra*, at 37–38. In the instant matter, Hawkeye, as insurer of both Kolby and Tri-B Corporation, was such a participating non-party in that it controlled the defense in the case of Koppold v. Kolby and Tri-B Corporation. The record indicates the same law firm represented Kolby and Tri-B Corporation in the original lawsuit as now represent Hawkeye in this action, and buttresses our conclusion that Hawkeye controlled the course of the defense, although not a named party. Having established Hawkeye's relation to the original suit, we must determine whether the issue of negligence finally adjudicated therein bars further litigation here.

■ Hawkeye, as the insurer of both defendants in the original action, having had the opportunity to control the course of the proceedings, and incentive to litigate the matter of the brake failure as it related to the negligence in that action is barred from relitigating that issue. See Vestal, *supra*, at 74–76. The requirements of Goolsby, *supra*, 189 N.W.2d at 913–914,

namely: (1) identity of issues, (2) determination of these issues by a valid final judgment, (3) identity of parties or privies —have all been met.

The answers to the interrogatories to the jury in the case of Koppold v. Kolby and Tri-B have established the negligence and that issue may not be relitigated.

What effect, then, does this issue preclusion have upon the instant action, which is based only on strict liability in tort?

The adjudication of the liability of Kolby and Tri-B was a condition precedent to the present claim for indemnity. Thus, the prior determination of negligence is an "operative fact" in the present suit, but it does not bar Hawkeye's claim for indemnity. See Vestal, *supra*, p. 74, n. 184.

III. Ford urges in this appeal the prior determination of negligence on the part of Kolby and Tri-B was a finding of active negligence on their part, and that their subrogee, Hawkeye, may not be indemnified. In urging this proposition, Ford maintains a party seeking indemnification must show he was only "passively" negligent, while showing that the party from whom he seeks indemnification was "actively" negligent. Peters v. Lyons (Iowa 1969), 168 N.W.2d 759, 767; Iowa Power & Light Co. v. Abild Const. Co., 259 Iowa 314, 322–323, 144 N.W.2d 303, 308; Rozmajzl v. Northland Greyhound Lines, 242 Iowa 1135, 1143, 49 N.W.2d 501, 506; Anno., 28 A.L.R.3d 943; 41 Am.Jur.2d, Indemnity, § 20, pp. 706–710; 42 C.J.S. Indemnity § 27(b), pp. 606–608. Cases cited by appellant do not include a situation wherein the indemnity action is based upon strict liability in tort, as in the matter before us.

As we noted in Hawkeye-Security Ins. Co. v. Ford Motor Co., *supra*, 174 N.W.2d at 681, the active versus passive negligence concept in indemnity has been criticized but not rejected. It must also be noted that to our knowledge no prior Iowa case has dealt with the assertion of an active

versus passive negligence rationale in an action based solely on strict liability.

In Texaco, Inc. v. McGrew Lumber Co., 117 Ill.App.2d 351, 254 N.E.2d 584, and Suvada v. White Motor Co., 32 Ill.2d 612, 210 N.E.2d 182, the Illinois Supreme Court dealt squarely with the active versus passive rationale in a strict liability in tort action, and firmly rejected the application of fault weighing in such an action.

In *Texaco, supra,* 254 N.E.2d at 588, the court said:

" * * * Finally, we agree with the plaintiffs' contention that *Suvada* intended to eliminate the fault weighing process of active-passive negligence in determining any grant of indemnity relief."

*Texaco* then goes on to quote the following from *Suvada, supra,* at 210 N.E.2d 189:

" * * * Indemnity here is not, however, premised on any theory of active and passive negligence. (To require proof that Bendix was actively negligent would be the antithesis of strict liability.)"

And, continuing at 254 N.E.2d 588, *Texaco* goes on to say:

"That last quoted statement [referring to the one from *Suvada,* above] directly refutes McGrew's contention as to the indemnity theory necessary for recovery under strict liability. We are of the opinion that the policy considerations announced by *Suvada* in imposing strict liability justify the relief of indemnity against persons in the distributive chain who have placed a product in the stream of commerce with the knowledge of its intended use. In this respect we agree with the following statement from *Suvada,* at page 619, 210 N.E.2d at p. 186:

" 'Without extended discussion, it seems obvious that public interest in human life and health, the invitations and solicitations to purchase the product and the justice of imposing the loss on the one creating the risk and reaping the profit are present and as compelling in cases involving motor vehicles and other products, where the defective condition makes them unreasonably dangerous to the user, as they are in food cases.'

"This statement manifests a strong public policy that insists upon the distribution of the economic burden in the most socially desirable manner, even to the extent of ignoring the indemnitee's fault. (citations)."

■ Indemnity is not barred here by the failure of Kolby or Tri-B to discover the defective brakes, even if they were negligent in such respect. We need not decide whether indemnity would be barred, as distinguished from contribution, if Kolby or Tri-B were negligent in a respect independent of the brakes, which was a concurring proximate cause of the collision. See Texaco, Inc. v. McGrew Lumber Co., *supra*; Northwestern Mut. Ins. Co. v. Stromme, 4 Wash.App. 85, 479 P.2d 554.

■ Since this action sounds in strict liability in tort, rather than in negligence, the defense of contributory negligence in its ordinary sense is not available. By "ordinary sense" in this context we intend to include in contributory negligence any failure to discover or guard against possible defects of finished products. Williams v. Brown Mfg. Co., 45 Ill.2d 418, 261 N.E.2d 305, 310; Hursh, American Law of Products Liability, 1971 Supp., § 5A:26, pp. 331–332; Prosser, Torts, 4th Ed., § 79, p. 522; Restatement, Second, Torts, § 402A, Comment n., p. 356; Anno., 13 A.L.R.3d 1057, 1100–1101; Carmichael, Strict Liability in Tort—An Explosion in Products Liability Law, 20 Drake L.Rev. 528, 550–551; *contra,* Dippel v. Sciano, 37 Wis.2d 443, 155 N.W.2d 55, 63–65.

Therefore, plaintiff's conduct in merely failing to discover the defect, or in failing to guard against its possible presence, will not absolve the defendant of liability.

■ Defenses of assumption of risk and misuse of the product may be valid defenses when properly raised by the pleadings and proven. Williams v. Brown Mfg. Co., *supra*, 261 N.E.2d at 312; Ferraro v. Ford Motor Co., 423 Pa. 324, 223 A.2d 746; Maiorino v. Weco Products Co., 45 N.J. 570, 214 A.2d 18; Hursh, *supra*, 1971 Supp., § 5A:26, at 332–333; Prosser, *supra*, at 523; Restatement, *supra*; 13 A.L. R.3d, *supra*, at 1100–1101; 20 Drake L. Rev., *supra*, at 551–552, cf 38 So.Cal.L.Rev. 30.

■ Instructions to the jury in this case required Hawkeye to establish its insureds (Kolby and Tri-B) used the truck in the manner reasonably to be expected by the manufacturer, that the defect was in existence when the truck was delivered, and that such defect was a proximate cause of the damages. Guided by such instruction, the jury returned a verdict for Hawkeye, and against Ford. We are not disposed to disturb it.

IV. In the second division of its brief, Ford asserts the trial court erred in its failure to submit for the consideration of the jury Ford's pleaded theories in its cross-petition against Kelsey-Hayes of express warranty, implied warranty and negligence. As it was, the trial court submitted only Ford's theory of strict liability in tort for the consideration of the jury.

We recognize the seeming conflict between recovery under a theory of strict liability in tort and recovery under the theories of warranty, either express or implied. Many legal writers have dealt with this seeming conflict and have proposed solutions. See generally, 21 Okl.L.Rev. 411 (1968); 19 Rutgers L.Rev. 692 (1965); 22 Stanford L.Rev. 713 (1970); 18 Stanford L.Rev. 974 (1966); 21 S.W.L.J. 629 (1967); 32 Tenn.L.Rev. 363 (1965); 40 Tulane L.Rev. 715 (1966); 17 W.Res.L. Rev. (1965); 51 Va.L.Rev. 804 (1965). The authors of many of the Law Review articles referred to were concerning themselves with the warranty provisions of the Uniform Commercial Code, which was not in force in Iowa until July 1, 1967, some time subsequent to all times pertinent to this appeal. Further, strict liability in tort is not based on the Uniform Commercial Code and is not subject to disclaimer. Seely v. White Motor Co., *infra*.

The conflict is basically whether in the area of products liability, recovery under the theory of strict liability in tort or under a warranty theory are mutually exclusive of each other, or whether both theories of recovery should be available to a litigant.

In the first appeal of this case, 174 N. W.2d at 684–685, this court said, "We held both implied warranty and strict liability in tort were properly pled and there was substantial evidence to support submission of each of them to the jury. This does not mean both theories had to be submitted to the jury as a matter of right. This depends on the facts of each case."

Kelsey-Hayes maintains the theories of warranty and strict liability may never be submitted under the same set of facts, and relies upon a further pronouncement of this court in the first appeal of this case, appearing in 174 N.W.2d at 684–685, viz: "Ordinarily strict liability in tort is in lieu of one or more of the implied warranty theories. Such a warranty theory should not necessarily be submitted with a strict liability in tort theory. We do not foreclose fact situations where both theories should be submitted but recognize such a situation would be exceptional."

■ We interpret our prior pronouncement to mean simply that we recognize as a practical matter, as opposed to a rule of law, that not many cases will involve both theories sufficiently to warrant having them presented for the consideration of a jury. We do not interpret it to mean, as does Kelsey-Hayes, that both theories shall never be given consideration in the same case.

Perhaps the best known case involving the conflict between the warranty theories (under the U.C.C.) and strict liability in tort, is the case of Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145. In the Seely case, Traynor, J., writing for the majority said when there was a personal injury involved, strict tort liability overrides recovery on a warranty theory (again under the U.C.C.); when the loss is purely property, he did not rule out the use of strict tort, but when the loss is economic, such as loss of profit, loss of bargain, loss of business, etc., then the right of recovery must be governed by the warranty approach.

In *Seely*, Peters, J., concurring in part and dissenting in part, contended it was not the type of loss which should determine the theory of recovery, but rather recovery should depend upon the parties involved; thus, if there was privity between the parties to the action, the warranty approach should control; if there was no privity, the action would be in strict tort.

■ Recovery under a theory of strict liability in tort results from a public policy decision that protects the consumer from the inevitable risks of damage or harm brought about by mass production and complex marketing conditions. Thus, strict liability in tort serves a necessary purpose. See Farr v. Armstrong Rubber Co. (1970), 288 Minn. 83, 179 N.W.2d 64, 71.

The cross-petition here, that is to say, Ford's cross-petition against Kelsey-Hayes, is between two corporations in a commercial setting, involving a contract, and is essentially a commercial transaction. As stated in Farr, *supra*, 179 N.W.2d at 71, "The laws of warranty still meet the needs of commercial transactions and function well in a commercial setting." We conclude in this action the submission of the theory of express warranty pleaded by Ford, and the theory of recovery under strict liability in tort should both be permitted.

■ We deal with the theories of express and implied warranty separately. As to the implied warranty claim in the cross-petition we find nothing in the evidence or in the law to justify submission of both the claim of violation of implied warranty and the claim of violation of strict liability in tort. For the purposes of this case submission of strict liability, dispensing as it did with the trappings of warranty, disposed of the implied warranty.

The express warranty count is more difficult. Ford's order blank contains the following:

"8. WARRANTY—Seller warrants that the supplies covered by this purchase order will conform to the specifications, drawings, samples, or other description furnished or specified by Buyer, and will be fit and sufficient for the purpose intended, merchantable, of good material and workmanship, and free from defect. The warranties and remedies provided for in this Paragraph and Paragraph 7 (Inspection) shall be in addition to those implied by or available at law and shall exist notwithstanding the acceptance by Buyer of all or a part of the supplies with respect to which such warranties and remedies are applicable."

This warranty imposes a contractual duty upon Kelsey-Hayes which is broader than the duty imposed by strict liability and would provide the footing for submission of the express warranty count. The theories involve different proofs and in a case like this one are simply different approaches to secure the same recovery.

In this connection Ford's position differs from Hawkeye's position. Hawkeye produced evidence from which the jury could find the brake was in a defective condition when it left the Ford plant. In large part this finding is based on evidence that the brake drum was never "pulled". In other words, the offending mechanism was covered and was not disturbed by anyone between the time it left Ford's hands and the

time of the accident. From this the jury could infer the defect, if it found a defect, occurred sometime before Ford released the vehicle.

■ Ford's situation vis-a-vis Kelsey-Hayes is somewhat different. Although the workman installing the unit could see the hold-down nut immediately before him, he had no duty, as such, to inspect for the presence or absence, or defectiveness of the hold-down nut. The brake assembly was delivered to Ford as a unit and installed as a unit. Inspection was on a quality control basis only and subsequent tests were not such as would reveal the absence of a hold-down nut, or if present a defective one. There is no showing the hold-down nut was not in the same condition when it came to Ford as when it left Ford's hands. There is, however, a showing that Ford made no changes or alterations in the brake assembly, but merely installed it as a unit.

The failure of the trial court to submit the issue of express warranty requires reversal.

V. As to the failure or refusal of the trial court to submit the issue of negligence in connection with Ford's claimed entitlement of recovery against Kelsey-Hayes, we again turn to the prior pronouncement of this court in the prior appeal in 174 N.W.2d at 685:

"The Divisions dealing with negligence is a different matter. 2 Frumer and Friedman, Products Liability, § 16A(2), page 3–178, st ates: 'While it was considered "simpler" to regard the liability stated as strict liability in tort, the section is *not* exclusive. It does not preclude liability based on the alternative ground of negligence, when negligence can be proved.' See also Restatement, Second, Torts, 402A, Comment (a)."

■ Therefore, we hold that when the pleaded negligence is proven, in addition to the showing entitling a litigant to an instruction under strict liability, the negligence issue should be submitted to the jury. We have reviewed the record in this case, however, and are unable to conclude there was sufficient proof of negligence to require or even permit the question of negligence to be submitted to the trial jury. There was no proof of any negligent manufacture on the part of Kelsey-Hayes, and the submission of the negligence issue would open up an area for conjecture and speculation by the jury. Ford Motor Co. v. Darryl (Ct. of Civ.App., Texas 1968), 432 S.W.2d 569, 571, aff'd. in part and rev'd. in part (Tex.Sup.Ct.1969), 440 S.W. 2d 630.

■ The trial court has the duty to instruct with reasonable fullness on pleaded issues which have supportive evidence. Hartwig v. Olson (Iowa 1968), 158 N.W. 2d 81, 88; but a mere scintilla of evidence is insufficient to authorize an instruction on an issue allegedly arising out of that evidence. Walker v. Sedrel, 260 Iowa 625, 632, 149 N.W.2d 874, 878.

■ Where there was no proof of negligence on an alleged specification, failure to instruct jury on such specification of negligence was not reversible error. Wilson v. Paul (Iowa 1970), 176 N.W.2d 807, 812.

■ It is error to submit a specification with no supportive evidence. Pierce v. Heusinkveld, 234 Iowa 1348, 1351, 14 N.W.2d 275, 277.

We find no error in the trial court's refusal to submit to the jury Ford's pleaded specification of negligence in its claim against Kelsey-Hayes.

VI. Our decision here will require a retrial only upon the matter of the cross-petition between Ford and Kelsey-Hayes.

We, therefore, affirm in part and reverse in part, and remand for further proceedings in conformity with this opinion.

Affirmed in part, reversed in part, and remanded.

LeGRAND, UHLENHOPP, REYNOLDSON and McCORMICK, JJ., concur.

RAWLINGS, J., dissents in part and concurs in part, joined by MOORE, C. J., and MASON and HARRIS, JJ.

RAWLINGS, Justice (dissenting in part, concurring in part).

I. Being unable to agree with the reasoning or result reached in Division I of the majority opinion I respectfully dissent.

In my humble *opinion Rule 336* says what it means, and under prior decisions of this court means what it says. If the rule is wrong it should be corrected by orderly revision, not by a judicial declaration which can lead to needless confusion.

As "relaxed" by the majority, rule 336 is now made relatively meaningless. It leaves practicing lawyers little of substance by which to be guided in taking an appeal and may well place on this court the endless task of resolving many if not all "substantial compliance" controversies on a case by case basis. In effect, the majority now says any notice will suffice if the opposition is thereby told an appeal is being taken.

Pending a studied and understandable revision of rule 336, I submit we should adhere to our holding in Schrader v. Sioux City, 167 N.W.2d 669, 672–673 (Iowa), and citations.

I would dismiss the instant appeal for want of a jurisdictionally adequate notice.

II. Without abandoning that position I yield to the will of the majority, thereby acknowledging the instant case is before us for review, and concur in Divisions II through V and the result reached.

MOORE, C. J., and MASON and HARRIS, JJ., join in this dissent.